REGAN, Judge.
Plaintiffs, Reilly-Benton, Inc., and the Peabody Corporation, filed this suit against their fire insurer, Liberty Mutual Insurance Company, endeavoring to recover the sum of $13,066.08, representing the difference between their net loss of inventory and fixtures resulting from a warehouse fire and the amount their insurer paid.
Plaintiffs explained that the amount of coverage was determined by monthly reports filed by them with the insurer and the last report filed before the loss occurred determined the extent of coverage.
They asserted that the insurer arbitrarily refused to consider their last monthly report mailed before the fire occurred, in which the inventory value, erroneously understated by some $13,000 in their previous report, had been corrected to reflect the true value of the inventory. Plaintiffs finally requested the imposition of statutory penalties and attorney’s fees.
Defendant answered and raised a policy defense claiming the report allegedly mailed two days before the loss was not received by the insurer until four days thereafter. It pointed out that the extent of coverage was determined by the values that the insurer had received in its office before the loss occurred, therefore it was *798 justified in disregarding the values stated in the report purportedly in transit when the loss occurred.
From a judgment dismissing plaintiffs’ suit, they have prosecuted this appeal.
The record discloses that the defendant issued a Special Multi Peril Policy in which both plaintiffs are named insureds. Included therein was coverage for loss of personal property by fire at three of the plaintiffs’ warehouses, one in Baton Rouge and two in New Orleans. Although Reilly-Benton and the Peabody Corporation are separately owned, Reilly-Benton, a vendor of construction materials such as insulation, duct work and air conditioning filters, supervises the Peabody Corporation, which fabricates several of these materials. Inventories of both corporations are housed in all three warehouses, but they are physically segregated. Records of each corporation are kept separately.
The fire loss from which this litigation arose occurred on April 20, 1968 in the Baton Rouge warehouse and the actual loss, it is agreed, totalled $57,749.09. While the Baton Rouge location had a policy limit of $75,000, the contract was designed to permit the insured to cover and pay premiums on that amount of inventory it had on hand at a given period. Thus as the value of the inventory increased or decreased, the insured was permitted to regulate his coverage by filing monthly reports fixing the value of the inventory; when the inventory increased the premium increased and when the inventory decreased the premium was accordingly reduced. The reporting clause in the contract of insurance required the insured to file written reports not later than 30 days after the last day of each calendar month, fixing the value of the inventory at each location insured. If reports were not filed currently, the clause provided, values included in the last report filed prior to the loss would determine the extent of coverage.
It is plaintiff’s contention that the values stated in the March 1968 report should have been the basis of adjusting the loss because this report was filed at the time of mailing, some two days before the fire actually occurred.
Defendant conversely adopts the position that the March report was not filed until it arrived in the Liberty Mutual office, and according to defendant’s records the March report was not received until four days after the loss occurred.
Whether the February or the March report is used in computing the loss makes a substantial difference in this case. The value of the inventory reported in March increased considerably over that reported for January and February of 1968. These values, excluding furniture and fixtures, were stated as follows:
January 31, 1968 $36,442.00
February 29, 1968 36,863.00
March 31, 1968 53,235.00
The reports for January and February are dated March 20, 1968 and the March report is dated April 18, 1968. Plaintiffs’ comptroller testified that the inventories of January and February were undervalued because of a bookkeeping error that was not corrected until after the reports were submitted. He further related that the error was rectified in the March report, and submitted before the loss. Plaintiff also adduced testimony to the effect that while the stock in the Baton Rouge warehouse was undervalued for these months, the New Orleans warehouses overstated the value of the inventory on hand, thus the insurer lost little or no premiums due for the coverage.
The vexatious question which this appeal has posed for our consideration is whether the March report was filed within the requirement of the policy provision when it was mailed on April 18, 1968 before the loss occurred or whether it was filed on April 24, 1968 after the loss occurred. To reiterate the fire occurred on April 20, 1968.
*799 Plaintiffs insist that the date of filing was the date the report was mailed. They assert that the testimony of their comptroller to the effect the report was mailed April 18th is uncontroverted by the defendant. Actually, the comptroller stated he signed the report on April 18th and deposited it in the “Out” basket. According to him if the clerical help in his office followed standard procedure, it would have been deposited in the mail that afternoon. The record is devoid of testimony by any of plaintiff’s staff to the effect that the document was physically deposited in the mail. According to the insurer’s records, this report was not received until six days after it was mailed from the plaintiffs’ New Orleans office to the defendant’s Dallas office. We pause to point out that the delay in delivery between the alleged mailing date and receipt date was not unusual for the transmittal of these reports. The record fails to explain whether the five to six day transmittal period is the result of delay in the plaintiffs’ office staff in posting the report or a delay in processing and delivery of the U. S. Postal Service. According to the uncontradicted testimony of one of the defendant’s employees, mail received by the insurer is processed and the date is stamped thereon by a mail clerk the morning of its receipt.
Plaintiffs contend that we should apply the well recognized rule of construction to the effect that ambiguities in a contract are resolved against the litigant who drafted the document.[1] They argue that the word “filed” as used in the contract of insurance is susceptible of two interpretations, i. e., mailed by the insured or received by the insurer. Conceding that this principle of law is correctly stated, we must resort to the language contained in the policy in order to judge whether usage of the word in this context is ambiguous. The clause in question (Reporting Endorsement — Specific Rate — III Reporting Provisions — B) provides :
“B. Value Reporting Clause: The insured shall report in writing to the Company, not later than 30 days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as of the last day of each calendar month. At the time of any loss, if the insured has failed to file with the Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable. If the inception date of this policy is the last day of the calendar month, then the first report of values due shall show the total actual cash values as of that date.”
We are of the opinion that the policy clearly states that the last report of values it has on file in its office at the time the loss occurred will be used as a basis for adjusting the loss. The insured under this policy is permitted to buy only what coverage is needed on his fluctuating inventory and his premiums increase or decrease monthly depending on the value of stock covered. However, the extent of coverage is fixed by the insured’s reports. Were we to interpret the word “filed” to mean the date the report was mailed, in the absence of a requirement to file by registered or certified mail, we would under the guise of a statutory interpretation of an ambiguity rewrite the contract. Our analysis of the provision convinces us that the filing requirement was designed to prevent an in *800 sured from undervaluing his inventory and paying for coverage at a lower rate until the loss occurred, then capriciously correcting the undervaluation after the loss. In making this observation, we are not implying that the plaintiffs altered their records after the loss occurred. We are simply emphasizing that since this possibility exists, we are of the opinion that the word “filed” in the quoted context means on file in defendant’s office.
It is unfortunate that the plaintiffs un-derinsured their inventory because of an ostensible bookkeeping error that was not corrected in defendant’s Dallas office until after the loss occurred. However, in view of the fact that the insured in this policy monthly fixes his rates according to the values he reports, the construction which we have placed upon the policy does not create an inequitable result since the insufficiency of coverage is a result of the plaintiffs’ error.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Albritton v. Fireman’s Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1964); Te-zeno v. Maryland Casualty Co., La.App., 166 So.2d 351 (1964).