**JONES WHOLESALE COMPANY, INCORPORATED, Plaintiff,**

v.

**GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, LTD., Defendant.**

Civ. A. No. 73–C–69–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Dec. 12, 1973.

Stephen M. Hodges, Abingdon, Va., for plaintiff.

George M. Warren, Jr., Bristol, Va., for defendant.

TURK, Chief Judge.

Plaintiff, Jones Wholesale Company, Incorporated, filed this suit against General Accident Fire & Life Assurance Corporation, Ltd., its fire insurer, seeking to recover both compensatory and punitive damages—compensatory damages for the difference between plaintiff's net loss of inventory and fixtures resulting from the fire of January 21, 1973 and the amount the insurer paid, and punitive damages for defendant's alleged wrongful, willful and malicious refusal to pay any portion of plaintiff's claim within a reasonable time from the date of the loss. Jurisdiction of this court is founded on the diversity of the parties, and is conferred by 28 U.S.C. 1332.

The case came on for trial before a seven-member jury on November 7, 1973. At the conclusion of plaintiff's evidence, the court sustained defendant's motion for a directed verdict in its favor as to punitive damages. Upon completion of all the evidence, each party moved for a directed verdict in its favor as to the report of values and limits of liability in effect on the date of loss. The court was of the opinion there were no material issues of fact to be resolved by the jury, but that only questions of law remained for the court to determine. The court discharged the jury from further consideration of the case and requested the parties to file memoranda in support of and in opposition to the respective motions for directed verdict.

On April 1, 1972, the defendant, through its general agent, Gibson and Turner Insurance Agency, entered into a written contract with plaintiff to insure against fire loss and other perils certain properties of the plaintiff warehoused in four contiguous leased locations in Bristol, Virginia. The defendant had issued to plaintiff a similar policy three years prior thereto through its general agent, Robert C. Boswell, Inc. of Bristol, Virginia.

The policy in controversy, in addition to providing for a limit of liability for all contributing insurance for each of

the four named locations, contains various "reporting provisions." The material portion of the crucial clause provides as follows:

"Value reporting clause: The insured shall report in writing to the company, not later than thirty days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as of the last day of each calendar month. At the time of any loss, if the insured has failed to file with the company reports of values as above required, this policy, subject otherwise to all its terms and conditions shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss. . . ."

The insurance contract required plaintiff "to file" with defendant a report of the value of plaintiff's insured property located at each location within thirty days after the end of each calendar month. The contract further provided that defendant's maximum liability for any loss to the insured property would be determined by the last report of value "filed" with the defendant, subject to maximum limits of liability as set out in the policy for each location. Under the policy as written on April 1, 1972, limits of liability as to location # 1 was $500,000.00, location # 2 was $200,000.-00 and location # 4 was $50,000.00. The general agent had no authority to increase higher overall limits without approval of defendant company, but had informed the plaintiff that it could request higher limits of liability from time to time and that such requests were generally approved as a routine matter. Defendant's agent had informed plaintiff, and rightly so, that "filing" value reports with the agent would be a "filing" with defendant within the meaning of the contract.

Plaintiff did not file monthly value reports in a timely manner. In August, 1972, plaintiff filed value reports for April, May, June and July. The report of values as of July 31, 1972 was $410,000.00 at location # 1, $195,000.00 at location # 2 and $20,000.00 at location # 4 (see Def. ex. 1–D). No further value reports were filed by plaintiff until January, 1973. On January 19, 1973, plaintiff had prepared value reports for August, September, October, November and December. On that date, plaintiff mailed said reports at the Bristol Post Office for delivery to defendant's agent. The envelope containing the reports was postmarked January 19, 1973, and assuming the usual course of events, the envelope was placed in the Gibson and Turner post office box in the Bristol, Tennessee Post Office, between the hours of 5:00 A.M. and 8:30 A.M. on Saturday, January 20, 1973. The report of values as of December 31, 1972 indicated the value at location # 1 to be $506,000.00, at location # 2 to be $272,000.00, and location # 4 to be $50,000.00 (see Pl. ex. 5–E). In the same envelope plaintiff's bookkeeper sent to defendant a letter requesting that the limits of liability at location # 2 be increased to $275,000.00. It was the general practice of the Gibson & Turner Insurance Agency at that time not to keep office hours on Saturday. Therefore, the defendant's general agent did not check its post office box on Saturday or Sunday, and the envelope containing the value reports and the request for increased limits was taken from the post office box by defendant's agent on Monday morning, January 22, 1973.

During the evening of January 21, 1973, fire swept plaintiff's premises, completely destroying the buildings and all contents at locations # 2 and # 4. In addition, certain merchandise at location # 1 was damaged by smoke and water, and certain office equipment, along with other items, was damaged in an attempt to save them from the fire. Plaintiff's actual loss at location # 1 was in the amount of $7,229.89. Of this amount, $2,731.68 represents damage to office equipment and other items and expenses incurred in minimizing the fire damage. At location # 2 the loss was

in excess of $272,000.00 and at location # 4 the loss was in excess of $50,000.00 (see Pl. ex. No. 2).

After ascertaining that plaintiff's loss at each location except # 1 was in excess of both the reported values and overall limits of liability at each location, defendant offered to pay $219,389.26, which amount was defendant's maximum liability under the values reported as of July 31, 1972, which defendant maintains was the last report of value filed by plaintiff on the date of the loss. Plaintiff disputed defendant's position as to its maximum liability, and an agreement was reached whereby defendant paid $219,389.26 to the plaintiff, without prejudicing plaintiff's right in any way to bring suit for any additional amounts it felt was due under the contract of insurance.

There are two legal questions to be decided in this case: (1) Whether the report of values for December 31, 1972, which had been mailed prior to the loss and was actually in the post office box of defendant's general agent at the time of the fire had been "filed" with the defendant as required by the Value Reporting Clause of the insurance contract. (2) Whether the request for increase in limits of liability were accepted by the defendant as of the date the request was written on January 19, 1973 or was placed in defendant agent's post office mail box on January 20, 1973. The court feels that the answer to question (1) should be in the affirmative and the answer to question (2) in the negative.

It is clear that the amount of coverage was to be determined by monthly reports of value filed by plaintiff with the defendant's agent, and the "last report of values filed prior to the loss" is controlling, subject, of course, to the overall limitations of liability as set out in the contract.

The court has been unable to find any Virginia case on the issue as to what constitutes the "filing" of a value report with the insurance company, and very few from other jurisdictions. Virginia does follow the well recognized rule relating to construction of insurance contracts to the effect that where there is ambiguity and the language of the contract is susceptible of two constructions it is to be construed strictly against the insurer and liberally in favor of the insured (see American Fid. Fire Ins. Co. v. Allstate Ins. Co., 212 Va. 302, 184 S.E.2d 11 (1971). "File with the Company" as used in the contract is susceptible of more than one interpretation, i. e. on file in office of defendant's general agent, or mailed by the insured and actually placed by postal authorities in the defendant's post office box.

Provisional reporting fire insurance policies are intended to afford the owners of fluctuating inventories the opportunity to acquire full insurance coverage while at the same time adjusting the premium the insured pays on the basis of values reported. The monthly reports determine both the coverage afforded subject to the limits of liability, and also the amount of the premium. The premium adjustment clause under the reporting provisions of the present policy provides in essence that the average of the total monthly values during the term of the policy shall be applied to the rate specified in the reporting endorsement to determine the premium. Furthermore, the right of the insured to vary the coverage provided, thereby varying the amount of the premium accordingly, is a right guaranteed by the policy. It can be seen that the purposes and functions of the report is fully served when the report has been mailed by the insured and placed in the insurer's post office box before the loss occurs, although not actually on file in the office of defendant's general agent. The filing requirement was obviously designed by the insurer to prevent an insured from undervaluing his inventory and paying for coverage at a lower rate until the loss occurred, and then capriciously correcting the undervaluation after the loss. Such a possibility did not exist in this case. Since the reports had been mailed prior to the time of the loss, and had been placed in the post office box of defendant's general agent, all informa-

tion contained therein had left the control of the plaintiff. There is nothing in the record to suggest or even hint that the report of values as of December 31, 1972 was not true and accurate. Once the report had been placed in the post office box of defendant's general agent, the defendant had no right to reject that portion of the increase which was within the limits of coverage. It had only the right to adjust the premiums to reflect the increased inventory reported and undoubtedly would have done so had the loss not occurred when it did. This case is readily distinguishable from the case relied upon by defendant. Reilly-Benton Co. v. Liberty Mutual Ins. Corp., 260 So.2d 797 (La. App.1972). In the Louisiana case the report of values was not received by the defendant until four days after the loss, and the record is silent as to when the document was actually physically deposited in the mail. Had the court in Reilly-Benton been called upon to decide the effect of reports unquestionably mailed by the insured and actually placed by the postal workers in the post office box of defendant's general agent prior to the time the loss occurred, the result may well have been different. This court finds that at the time of the loss on January 21, 1972, the value report for December, 1972, had been "filed with the company" as required by the policy of insurance. This holding is in keeping with the purpose and function of the value reporting clause and permits the only fair and just result that could be reached under the circumstances of this case.

The defendant's general agent had no authority to increase the stated limits of liability in the policy. This could only be done by a request for an increase from the insured and an acceptance of such requested higher limits by defendant's underwriter. At the time of the fire loss, the request for an increase had been made by the insured, but the request had not been acted upon or approved by defendant's underwriter. The requested increase was not effective at the time of the fire loss. No conduct or representations on the part of the defendant or its agent had led the plaintiff to believe otherwise. The court, accordingly finds that the requested increase in the limits of coverage was not effective at the time of the fire loss.

Based on the court's holding that the reported values as of December 31, 1972, subject to the limits of liability as stated in the policy, should control in computing the liability of defendant, the following table is set forth for the purpose of calculating the amount of the damages to which plaintiff is entitled to recover:

| | LIMITS OF LIABILITY UNDER POLICY | REPORTED VALUES AS OF DEC. 31, 1972 | ACTUAL FIRE LOSS | LIABILITY OF DEFENDANT |
|---|---|---|---|---|
| (Loc. #1) | $500,000.00 | $506,000.00 | $ 7,229.89 | $ 7,229.89 |
| (Loc. #2) | 200,000.00 | 272,000.00 | 293,564.98 | 200,000.00 |
| (Loc. #3) | 50,000.00 | 50,000.00 | 64,646.53 | 50,000.00 |

TOTAL LIABILTY OF DEFENDANT $257,229.89
LESS AMOUNT PAID BY DEFENDANT 219,389.26

REMAINING LIABILITY OF DEFENDANT $ 37,840.63

A judgment order will be entered for plaintiff for $37,840.63 plus taxable costs.