Calvin C. COCHRANE, III and Gloria Denton Cochrane, Plaintiffs,

v.

The TRAVELERS INSURANCE CO., Defendant.

Civ. A. No. 82–0326–R.

United States District Court, E. D. Virginia, Richmond Division.

Sept. 28, 1982.

**3.** Regardless of the plaintiff's action, the defendant must file a timely amended Index.

Joseph L. S. St. Amant, McGuire, Woods & Battle, Richmond, Va., for plaintiffs.

Robert P. Beaver, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

The plaintiffs, Calvin C. Cochrane, III ("Calvin") and Gloria Denton Cochrane ("Gloria"), who are married to each other, are residents of Virginia. They bring this action for damages for breach of a group health policy contract against The Travelers Insurance Company ("Travelers"), a Connecticut corporation which is registered to do business in Virginia but does not maintain its principal place of business in Virginia. The matter in controversy exceeds $10,-000 in value, exclusive of interest and costs. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

This matter comes before the Court on cross motions for summary judgment. Because neither motion, if granted, would resolve the whole case, each is treated as a motion for partial summary judgment pursuant to Rule 56(d), Fed.R.Civ.P.

The parties have entered into several stipulations and have submitted numerous deposition transcripts and documents in support of their respective motions. The Court finds that there is no genuine issue as to any fact material to the particular issues before the Court today and that those issues are ripe for summary judgment. The facts disclose:

Calvin is employed by McLane Construction Co. ("McLane"). As an employee of that company, he is covered under Group Policy G and GA–849986 ("McLane Policy"), a health insurance plan issued by Travelers.

Calvin and Gloria were married to each other on February 10, 1979. For purposes of the McLane Policy, Gloria then became a dependent of Calvin. As the Court will address *infra,* Calvin could have registered Gloria within a month of March 1, 1979 for dependents insurance under the McLane Policy without having to submit any evidence of her insurability. However, he did not do so because she already had health coverage under a group policy of her own employer, Robertshaw Controls Co., which policy likewise was issued by Travelers.

In 1980 Gloria became pregnant. Calvin and Gloria decided to inquire into health coverage for their child, to be effective at its birth. On July 15, 1981, at plaintiffs' request, Lillian Mercer, a McLane employee, contacted David Larson, a representative of Travelers who, the Court finds, was authorized to act on defendant's behalf. Mercer asked Larson about how to obtain dependents coverage for Calvin's dependents under the McLane Policy.

Plaintiffs completed the appropriate forms to apply for dependents insurance. Larson picked up the completed forms on July 20, 1981 at McLane's office, but the forms did not reach Travelers' home office until August 3, 1981.

In the meantime, the plaintiffs' son had been born. Justin Alan Cochrane ("Justin"), who was born on July 30, 1981, was found to suffer from myelomeningocele or spina bifida, a congenital birth defect in the walls of the spinal canal. The plaintiffs had had no reason to suspect before he was born that Justin would be so afflicted.

On August 13, 1981, Travelers' home office denied Calvin's application for dependents coverage because Gloria was deemed uninsurable during her pregnancy.

On August 26, 1981, Calvin applied for dependents coverage for Gloria and Justin. Travelers thereafter agreed to cover Gloria but declined to cover Justin on the ground of insufficient evidence of insurability.

The basis for defendant's refusal to cover Gloria during her pregnancy and its later refusal to cover Justin is that the McLane policy provision for the effective date of dependents insurance contains an exception

which defendant says is applicable. While defendant contends that its exception is written in "plain and clear language"[1] and mandates a finding in its favor, the Court disagrees.

The policy gives an employee one month from the date he or she becomes eligible for dependents insurance to file for that coverage. If the employee does not file within that month, Travelers may require evidence of the insurability of each dependent before Travelers will undertake coverage.

Calvin had no dependents when he first became eligible for his own health coverage in 1975; hence, he did not become eligible for dependents insurance until his marriage in February, 1979. The provision in the McLane Policy that sets forth the date of Calvin's eligibility for dependents insurance is the key point of controversy in regard to the issues now before the Court. That provision is found on Page 2A of Exhibit A, which in the lower left-hand corner contains the printed figures "(R–16)" and, underneath, "GC–3902–2A." Section 1, entitled "Employees Eligible," item (a)(3) contains the provision, which states: "each such Employee is to be eligible for the Dependents Insurance on the date he becomes eligible for the Employee Insurance or on the Eligibility Date next following the date he acquires a Dependent, whichever is later."

The question before the Court narrows down to whether "the" date an employee acquires a dependent should be read to mean "each" such date, as the plaintiffs strongly contend, or as the "first" such date, as the defendant, with similar force, contends (though the parties have used the terms " 'each' dependent" and " 'first' dependent").[2]

If the proper reading is "each," then whenever an employee "acquires" (to use the defendant's slightly distasteful term) a dependent, the employee may file for dependents insurance within a month of the first day of the next month and not have to submit any evidence of insurability, presumably even as to those dependents the employee had previously acquired. In the instant case, that would mean that since Calvin applied for coverage again on August 26, 1981, within one month of the first day of the month after he acquired Justin, Travelers would not be entitled to ask for evidence of insurability as to either Justin or Gloria.

---

1. The exact text of the exception defendant relies on is as follows:

   If the Dependents Insurance is on a Contributory Basis and the Employee does not file written authorization as specified in Item (a)(3) of this Section within One month after the date he becomes eligible for such Insurance, the Company may also require as a condition to giving its consent as specified in said Item (a)(3), evidence of the insurability of each person who is a Dependent of such Employee. If such evidence with respect to any Dependent is not accepted by the Company as satisfactory, such person shall not, for the purposes of the insurance under this policy, be deemed a Dependent and no Dependents Insurance shall be provided under this policy with respect to such person.

   Group Policy No. G and GA–849986, at GC–3902–2A (Exhibit A at 2B).

2. The defendant contends that this question is governed not by the policy provision just quoted, but by the relevant part of the Group Policy Booklet and Certificate of Insurance distributed to the McLane employees. Page 5 of that booklet tells the employee: "You will be eligible for the insurance on your Dependents on ... the first day of the month next following the date you acquire your first Dependent ...." However, page 1 of the booklet contains a statement from a vice president of Travelers that includes the following disclaimer: "The final interpretation of any specific provision herein is governed by the terms of the policy."

   The defendant points to various riders to the McLane Policy which have made reference to such booklets as they have been revised. In particular, rider no. 10 refers to booklet GP–347313, effective March 1, 1981, the booklet just quoted. The rider states that certain provisions of the "Certificates of Insurance issued ... under said policy ... are incorporated into and made a part of said policy."

   But if the booklet is to be part of the policy, it is at least confusing that the booklet refers the reader to the policy—thus to itself?—for the final interpretation of "any specific provision" of the booklet (presumably including those provisions the rider purports to incorporate into the policy). The Court concludes that the weight to be given to the language in the booklet is itself a matter of ambiguity. The Court will address *infra* the proper treatment under Virginia law of ambiguities as they appear in insurance contracts.

If the proper reading is "first," then the employee gets only one "grace period" in which to apply for dependents insurance. If the employee first acquires a dependent on the first day of a month, the grace period runs for the maximum period of two months, through the end of the next month. The minimum grace period would be a month and a day. Thereafter, if the employee ever desires to obtain dependents coverage, he or she must submit evidence as to the insurability of each dependent. As the Court has previously noted, Calvin did not file an application for dependents insurance for Gloria in the month following March 1, 1979. In the instant case, then, this reading would mean that Calvin could have obtained coverage for Gloria only by the fall of 1980 (assuming she was not otherwise uninsurable), since the defendant thereafter would have deemed her uninsurable due to her pregnancy.

In this diversity matter, the Court must apply the relevant Virginia law.

■ Contrary to defendant's assertion, the Court does not find the language of the McLane Policy to be so plain and clear on its face that it needs no construction by the Court.

■ Virginia follows the accepted maxim of insurance law that when there is a reasonable doubt about the meaning of an insurance policy, such doubt should be resolved in favor of coverage for the insured. *See, e.g., White v. Blue Cross,* 215 Va. 601, 602, 212 S.E.2d 64, 65 (1975) (per curiam); *State Farm Mutual Automobile Ins. Co. v. Manojlovic,* 215 Va. 382, 384, 209 S.E.2d 914, 916 (1974); *Mollenauer v. Nationwide Mutual Ins. Co.,* 214 Va. 131, 132, 198 S.E.2d 591, 592 (1973) (per curiam); *see also Jefferson-Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley,* 638 F.2d 670, 674 (4th Cir. 1980); *Jones Wholesale Co. v. General Accident Fire & Life Assurance Corp.,* 370 F.Supp. 478, 481 (W.D.Va.1973) (both applying Virginia law), *aff'd mem.,* 508 F.2d 838 (4th Cir. 1974). But "[w]hile any ambiguity must be resolved against the insurer, the construction adopted should be reasonable, and absurd results are to be avoided."

*Transit Casualty Co. v. Hartman's, Inc.,* 218 Va. 703, 708, 239 S.E.2d 894, 896 (1978); *see, e.g., Phoenix Indemnity Co. v. Anderson,* 170 Va. 406, 415, 196 S.E. 629, 633 (1938) (rule of reason must prevail in construction).

■ Applying those broad principles to the instant case, the Court is of the view that it must accept the plaintiffs' interpretation and find that the McLane Policy allows a grace period following each time an employee acquires a dependent, unless such an interpretation would be unreasonable or lead to absurd results.

The Court is not unmindful of the potentially great significance such an interpretation could have for the defendant. An employee who does not have dependents coverage could have a dependent who was desperately ill. If the employee then acquired another dependent, the insurance company would suddenly become obligated to undertake the medical expenses of the previously acquired dependent even if the company would consider that dependent uninsurable. The Court is convinced, however, that this eventuality is not so harsh as to suggest that such an interpretation would be unreasonable or the results absurd, for two reasons that are based on a reading of the policy as a whole.

First, under the provision on the date of eligibility for dependents insurance heretofore referred to, an employee is subject to the grace period after acquiring a dependent *or* "on the date he becomes eligible for the Employee Insurance ... whichever is later." Under this clause, if McLane were to hire an employee who already had a dependent who was desperately ill, as described above, that new employee could obtain dependents coverage on the day he or she became eligible for personal coverage (after completing the "Required Period of Service"), without submitting evidence that the dependent was insurable. Surely the defendant has more to fear from employees with sick dependents who (the employees) decide to obtain jobs as a means of gaining health insurance coverage than from em-

ployees with sick dependents who (the employees) decide to conceive more children as a means of gaining health insurance coverage.

Second, the McLane Policy contains a provision by which the defendant evidently protects itself from such employees with previously acquired sick dependents. The exception following the one providing for submissions of evidence of insurability provides that Travelers does not cover dependents who are confined to a hospital until 30 days after the dependent leaves the hospital or until Travelers receives evidence sufficient to establish that the dependent "has completely recovered from all injuries and sicknesses,' whichever first occurs. Thus, defendant has developed an objective test for when it is in danger of the only adverse outcome that could follow from the plaintiff's interpretation.

Even assuming *arguendo* that defendant's reading is correct and the grace period applies only to the first time an employee acquires a dependent, the very exception the defendant relies on[3] contains a provision which compels a judgment for the plaintiffs in the instant case on the issue of coverage. The exception requiring evidence of insurability provides that "[i]f such evidence with respect to any Dependent is not accepted by the Company as satisfactory, such person shall not, for the purposes of the insurance under this policy, be deemed a Dependent and no Dependents Insurance shall be provided under this policy with respect to such person." Since Travelers found the evidence of Gloria's insurability to be unsatisfactory while she was pregnant, she was not deemed Calvin's dependent. Thus, Calvin first acquired a dependent—actually, two dependents— when Justin was born and Gloria ceased to be pregnant.

That Gloria and Justin became Calvin's first dependents was made clear by the defendant's response to the following hypothetical. An employee becomes married but does not enroll his or her spouse for dependents insurance during the grace peri-od. Subsequently, the spouse dies. The defendant conceded that if the employee later remarries, the *second* spouse becomes the *first* dependent for purposes of the policy, since the employee had no other dependent immediately beforehand. Accordingly, as the defendant said, the employee can enroll the new spouse within the grace period without submitting evidence of insurability.

"[F]or the purposes of the insurance under this policy," Calvin had no dependents immediately before July 30, 1981. Whether Gloria or Justin should be deemed his first dependent concededly makes a nice metaphysical question, but in either case, Calvin applied for dependents insurance within the grace period allowed for the first dependent under the defendant's interpretation of the policy. The defendant had no right under the contract, even as defendant interprets it, to require evidence of insurability as to Calvin's dependents.

Accordingly, the Court concludes that the defendant was obligated under the terms of the McLane Policy to undertake insurance coverage of Calvin's dependents as per Calvin's August 26, 1981 application. Plaintiff's motion for summary judgment will be granted.

The only issue remaining before the Court is whether the defendant acted in bad faith in denying coverage so as to be liable for exemplary damages, attorney's fees, and costs, as plaintiffs' amended complaint alleges. The Court intimates no opinion as to this issue.

An appropriate order will issue.

---

**3.** *See* note 1 *supra.*