HELEN SCHWINDT, PERSONAL REPRESENTATIVE OF THE ESTATE OF ALBERT H. SCHWINDT, DECEASED, APPELLANT, ROYAL INSURANCE COMPANY OF AMERICA AND WESTERN SUGAR COMPANY, APPELLEES, V. DYNAMIC AIR, INC., A CORPORATION, ET AL., APPELLEES.

. 501 N.W.2d 297

Filed June 11, 1993.    No. S-91-259.

Robert P. Chaloupka and Rhonda R. Flower, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellant.

Reed A. Grandgenett, of Gaines, Mullen, Pansing & Hogan, for Tate and Lyle appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

In this appeal, we hold that the trial court erred in granting a summary judgment declaring that none of the defendant-appellees served in this litigation are responsible for the death of Albert H. Schwindt, an employee of Western Sugar Company.

In her district court petition, Helen Schwindt, as personal representative of the estate of Albert Schwindt, claimed that the decedent died as a result of a work-related accident while he was employed by Western. She further claimed that the defendant-appellees were liable by virtue of negligence on the part of Leslie Cole, an employee of at least one of the defendant-appellees'. Throughout this litigation, the defendant-appellees have maintained they had no responsibility for the accident because Cole was on temporary loan to Western.

Since there is a question of fact as to at least one of the defendant-appellees' responsibility for negligence in regard to Albert Schwindt's death, the summary judgment entered by the district court for Scotts Bluff County is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion.

At all times relevant, Tate and Lyle, PLC, was a British corporation which had a 75-percent ownership interest in Western and had a number of subsidiaries and operating

divisions worldwide. While constructing a multimillion-dollar sugar storage facility at its plant site in Bayard, Nebraska, Western required the services of a project manager. In February 1986, Western and one of the defendant-appellees, Tate and Lyle Agribusiness, entered into an agreement of "secondment" in regard to Cole, one of their agribusiness employees stationed in South Africa. "Secondment" is defined as "the detachment of a person . . . from his regular organization for temporary assignment elsewhere." Webster's Third New International Dictionary, Unabridged 2051 (1981).

The secondment agreement was prepared by Peter Rumbell, Cole's immediate supervisor and the managing director of Tate and Lyle Engineering, an operating division of Tate and Lyle Agribusiness. The agreement provided in part:

> 3. [Cole's] services would be provided to Western Sugars essentially at cost (i.e. to recover Les Cole's salary and other directly related salary expenses) . . . .
>
> . . . .
>
> 6. During the period of the secondment Mr Cole would take his instructions from and act on your behalf. *However, there is a certain degree of corporate responsibility and it is therefore planned that [Rumbell] will visit Western Sugars to review the work being done by Mr Cole, probably within the first two to three months of the secondment.*
>
> . . . .
>
> 8. During our telephone conversation, we suggested that Western Sugars may wish to consider an incentive scheme whereby any saving achieved on the estimated project capital cost of approx US $3 million should be split 85% Western Sugars 15% TLE. This would provide a very real incentive to ensure that project management / cost control was effectively and efficiently implemented. In the final analysis, we would leave this aspect to your judgement, which would presumably reflect your satisfaction with the way in which the project had been managed. Perhaps this is not an unreasonable suggestion when one considers the fact that Western Sugars are obtaining project management services at a subeconomic

rate equivalent to perhaps a quarter of the commercial cost.

9. If it should become necessary for TLE to withdraw the services of Mr Cole due to health, compassionate or any other reason prior to the completion of the project, then we would endeavour to replace him with a person of similar experience and within the same cost framework.

(Emphasis supplied.)

Gary Maggi, Western's area engineer, confirmed Western's agreement with all the conditions set forth in the secondment agreement except for item No. 8, which item the parties agreed to eliminate from the secondment agreement. Cole was employed as a project manager at the Bayard plant site from February through December 1986.

In her second amended petition, Schwindt alleged that the decedent died December 31, 1987, in an accident arising out of and in the course of his employment with Western. The second amended petition states that sometime prior to the decedent's death, Dynamic Air, Inc., designed, manufactured, and sold to Western a system for transporting and loading sugar through insertion of a tube into trucks or railroad cars. A latching mechanism was required to allow safe delivery of the sugar to a truck or railroad car because the tube delivered the product under such high air pressure that the components could become detached from the conveyances being loaded. The second amended petition alleges that while the decedent was loading sugar into a truck, the tube tore free from the latching mechanism, thereby causing the plate affixed to the end of the tube to swing violently through the air. The plate struck the decedent, causing him to fall off the truck and sustain fatal injuries.

The second amended petition also alleged that the Tate group provided the project manager, Cole, to oversee the construction of the project, including the loading system, and that the group was negligent

a) [i]n failing to provide a project engineer who was reasonably competent to oversee the construction of the project and the installation of "the system" in such a way that it would be reasonably safe for the foreseeable users

[and]

   b) [i]n failing to oversee the project and conduct the duties of a project engineer in such a way as to cause the project and "the system" to be installed in such a way as to be reasonably safe for the foreseeable user.

The second amended petition alleged that the Royal Insurance Company of America was the workers' compensation carrier for Western. Royal and Western were named as party plaintiffs in this action because of their workers' compensation subrogation interest. As Western's workers' compensation carrier, Royal paid compensation benefits on account of the decedent's death. The parties' briefs acknowledge that Dynamic Air was dismissed from this litigation after settling with the decedent's estate.

In its answer to the second amended petition, the Tate group denied any negligence on its part or on the part of any of its employees which proximately caused the death of Albert Schwindt. The Tate group also claimed, in part, that (1) Cole was employed by Western and was under the exclusive direction and control of Western in the performance of his duties as project manager; (2) Cole did not exercise any authority or give any directions on behalf of any member of the group in regard to the design, construction, or operation of the sugar storage project; and (3) no member of the group assumed or undertook any obligation to oversee the construction or operation of the sugar storage project.

At the hearing on the Tate group's motion for summary judgment, the group offered into evidence the affidavits of Cole and Rumbell and a portion of the depositions of Maggi and Douglas Lapins, president of Western. Schwindt offered into evidence the remaining portions of the depositions of Maggi and Lapins, an affidavit in opposition to the motion for summary judgment, and portions of Cole's personnel file with the Tate group. These exhibits were all received into evidence. Schwindt was given until January 7, 1991, to submit other depositions. These other depositions are marked with the reporter's initials and dated January 9. A supplemental transcript reflects that they were received into evidence on January 9 and considered by the trial judge.

On January 15, 1991, the trial judge entered a summary judgment in favor of the Tate group. The court stated that "other entities unknown, John Doe I through X, and Les Cole are not summoned; so this order has no effect on them since they are not parties to the case." In finding that Cole was under the supervision and control of Western and that he was performing services on behalf of Western, the court relied on the terms of the secondment agreement. The court stated that "since paragraph 8 never became part of the agreement, Tate & Lyle Engineering had no interest in the performance of Mr. Cole; and the planned visit by Mr. Rumbell never took place."

In reviewing an order sustaining a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences that may be deduced from the evidence. *Professional Firefighters of Omaha v. City of Omaha, ante* p. 166, 498 N.W.2d 325 (1993). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *First United Bank v. First Am. Title Ins. Co.*, 242 Neb. 640, 496 N.W.2d 474 (1993).

In this court, Schwindt assigned as error, inter alia, that the trial court erred in granting summary judgment because there was a question of fact regarding the Tate group's control of Cole as evidenced by the agreement. In an affidavit admitted into evidence at the hearing on the Tate group's motion for summary judgment, Rumbell stated that the term "corporate responsibility" contained in item No. 6 of the Tate-Western agreement means only that the Tate group would be responsible for replacing Cole with a suitably qualified and experienced substitute if Cole proved unsuitable in the opinion of Western or if Cole was not prepared to continue working for Western. Rumbell denied visiting the site of the sugar storage project in Bayard at any time.

Lapins, Western's president, testified in his deposition that in his view, Rumbell's use of the term "corporate responsibility"

means that "he [Rumbell] felt he had some responsibility in terms of supervising the project if we did—you know, if they did a lousy job of supervising the project." Asked if Tate would be sued, Lapins replied, "We'd be after them, yeah."

The term "corporate responsibility" is not defined in the agreement. Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Metropolitan Life Ins. Co. v. Beaty*, 242 Neb. 169, 493 N.W.2d 627 (1993). The agreement states that Cole will take instructions from Western, but that because "there is a certain degree of corporate responsibility," Rumbell would visit Western to review Cole's work. In his deposition, Rumbell stated that any review of Cole's work would have been to ascertain that both Western and Cole were happy with the arrangement. Rumbell testified that his responsibility would have been to replace Cole with someone better suited for the job had either party been dissatisfied. Although the parties subsequently agreed to eliminate item No. 8, which provided for the Tate group to receive a portion of any savings achieved on the project capital cost, item No. 6 was not eliminated.

Taken as a whole, the agreement is ambiguous regarding the amount of control, if any, that the Tate group retained over Cole. When the terms of a contract are in dispute and the real intentions of the parties cannot be determined from the words used, the jury, and not the court, should determine the issue from all the facts and circumstances. See *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). When it is established that a contract is ambiguous, the meaning of its terms is a matter of fact to be determined in the same manner as other questions of fact which preclude summary judgment. *Id.* A written instrument is open to explanation by parol evidence when its terms are susceptible to two constructions or where the language employed is vague or ambiguous. *Bank of Burwell v. Kelley*, 233 Neb. 396, 445 N.W.2d 871 (1989); *Olds v. Jamison*, 195 Neb. 388, 238 N.W.2d 459 (1976).

Viewing the evidence in the light most favorable to Schwindt, we find that (1) the failure to define "corporate responsibility" in item No. 6 of the secondment agreement and (2) varying

reasonable interpretations of the phrase "corporate responsibility" in the secondment agreement present a genuine issue as to material fact regarding the degree of control the Tate group or a member thereof retained over Cole. The trial court erred in granting summary judgment, and its judgment is hereby reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion.

In view of our holding, Schwindt's remaining assignments of error need not be discussed.

REVERSED AND REMANDED FOR<br />FURTHER PROCEEDINGS.

LANPHIER, J., participating on briefs.