DALTON BUICK, OLDSMOBILE, PONTIAC, CADILLAC, INC., DOING
BUSINESS AS DALTON BUICK-OLDS-PONT-CAD, INC., DOING
BUSINESS AS DALTON'S AUTO CENTER, APPELLEE, V. UNIVERSAL
UNDERWRITERS INSURANCE COMPANY, APPELLANT.

511 N.W.2d 189

Filed August 3, 1993. No. A-92-463.

Ronald S. Depue, of McDermott & Depue, for appellant.

Howard P. Olsen, Jr., and Robert G. Simmons, Jr., of Simmons, Olsen, Ediger & Selzer, P.C., for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

IRWIN, Judge.

## INTRODUCTION

Appellee, Dalton Buick, Oldsmobile, Pontiac, Cadillac, Inc. (Dalton), brought this action regarding an insurance policy issued by appellant, Universal Underwriters Insurance Company (Universal), covering a portion of appellee's motor vehicle inventory. The district court for Scotts Bluff County granted appellee's motion for summary judgment. For the reasons set forth below, we affirm.

## FACTUAL BACKGROUND

Dalton operates an automobile dealership in Scottsbluff, Nebraska. Universal insured a portion of Dalton's motor vehicle inventory. The insurance policy required Dalton to report the value of its inventory within 15 days after the last day of each month. The policy's "reporting provision" states as follows:

> YOU MUST REPORT - Within 15 days after the end of each calendar month, YOU must report the cost of all AUTOS owned by or consigned to YOU as of the last business day of that month.
>
> THE MOST WE WILL PAY - Regardless of the number of AUTOS insured, the most WE will pay for any one LOSS to COVERED AUTOS is the least of the following:
>
> (a) the total cost of all COVERED AUTOS;
>
> (b) with respect to COVERED AUTOS owned by or consigned to YOU, the percentage the last report of AUTO values (received by US prior to the LOSS) bears to

the cost of all such AUTOS that YOU should have reported.

The insurance contract required that Universal receive a report of the value of Dalton's insured property. Further, the contract provided that Universal's liability for any loss to the insured property would be determined by the last report of value received by Universal, subject to maximum policy limits set out in the policy. These reporting clauses are sometimes referred to as "honesty clauses" or "value reporting clauses."

On May 14, 1991, Dalton mailed its premium check and inventory report for the month of April. During the evening of May 15, a hailstorm damaged Dalton's vehicle inventory in the amount of $105,550. Universal asserts that it did not receive Dalton's report until May 16, the day after the loss, and that under the above provision, the last report received prior to the loss was the report for the month ending March 31.

The value of the total inventory reported on Dalton's March report was 30 percent lower than the actual value of its inventory on the date of the loss. According to the policy, when Universal has not received a timely monthly report prior to the loss, its liability is limited to the percentage that the inventory value last reported bears to the actual inventory value on the date of the loss. Because the reported value for inventory on the March report was 70 percent of the value of Dalton's inventory on the date of the loss, Universal paid Dalton 70 percent of its total loss, or $73,885. Dalton filed this action seeking $31,665, the remaining 30 percent that it alleges is due from Universal under the policy. The trial court granted Dalton's motion for summary judgment, and Universal has brought this appeal.

## ASSIGNMENTS OF ERROR

Universal alleges that the trial court erred in (1) granting Dalton's motion for summary judgment, (2) failing to grant Universal's motion for summary judgment, (3) failing to find that Dalton had received full payment under the insurance policy issued by Universal, and (4) failing to find that Universal received Dalton's inventory reporting form after the hail loss had occurred.

## STANDARD OF REVIEW

Summary judgment is to be granted only when the record discloses that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Amco Ins. Co. v. Norton*, 243 Neb. 444, 500 N.W.2d 542 (1993). When reviewing a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991).

Although the denial of a motion for summary judgment is not a final order and thus is not appealable, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, an appellate court obtains jurisdiction over both of the motions and may determine the controversy which is the subject of those motions, making an order specifying the facts which appear without substantial controversy and directing such further proceedings as it deems just. *Id*.

## ANALYSIS

The issue presented by this case is one of first impression regarding the date that an insurance inventory reporting form becomes effective. The specific question here is whether the report of values for April 1991, which had been mailed prior to the loss, had been "received" by Universal, as required by the policy's reporting provision. Universal is in agreement with Dalton that the report was mailed on May 14, 1 day before Dalton's loss.

*Purpose of Reporting Form Policies.*

Reporting form insurance policies, like the one here at issue, are designed to give owners of fluctuating inventories the opportunity to obtain full insurance coverage while adjusting their insurance premium in accordance with the changing value of the inventory reported. See *Jones Whsle. Co., Inc. v. General A. F. & L. Assur. Corp., Ltd.*, 370 F. Supp. 478 (W.D. Va. 1973), *aff'd* 508 F.2d 838 (4th Cir. 1974). Reporting form

insurance policies contain an honesty clause that requires the insured to send a report stating the value of the insured's inventory at the end of each month. The report also determines the amount of the premium that the insured is to pay each month. The honesty clause embodies the parties' intent to "prevent an insured from undervaluing his inventory and paying for coverage at a lower rate until the loss occurred, and then capriciously correcting the undervaluation after the loss." *Jones Whsle. Co., Inc.*, 370 F. Supp. at 481. The function of the honesty clause is fully served when the report is mailed before the loss occurred, even though the report is not actually in the insurer's office.

The honesty clause contained in the insurance contract between Dalton and Universal stated that the report Universal would use in determining the amount of any particular loss would be "the last report of AUTO values (*received* by US prior to the LOSS)." (Emphasis supplied.) Universal claims that the term "received" cannot mean mailed by the insured, but must mean physically received at their office. The resolution of this case turns on the definition of "received" as it was intended by the parties to this contract.

*Ambiguity.*

This court has been unable to find any authoritative statement on the meaning of the term "receive" in the context of a value reporting clause. In interpreting the terms of an insurance contract, we follow the well-established rule that when the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. Moreover, when a clause in an insurance policy can be fairly interpreted in more than one way, there is an ambiguity to be resolved by the court as a matter of law. *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6 (1993); *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992).

Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Schwindt v. Dynamic Air, Inc.*, 243 Neb. 600, 501 N.W.2d 297 (1993); *Metropolitan Life Ins. Co. v. Beaty*, 242 Neb. 169, 493

N.W.2d 627 (1993).

The term "receive" is not defined in Universal's insurance policy. Other jurisdictions have differed in their interpretations of this term in the context of insurance policies. Compare *Franklin v. Carpenter*, 309 Minn. 419, 244 N.W.2d 492 (1976) (holding that deposit of check in the mail satisfied insurance company's condition that the premium be "received" before reinstatement) with *Reddick v. Globe Life and Acc. Ins. Co.*, 575 So. 2d 207 (Fla. App. 1990), *rev'd on other grounds* 596 So. 2d 435 (Fla. 1992) (holding that insured's placement of payment in mail did not satisfy insurance company's requirement that payment be "received" within 31 days of premium due date). The ambiguity of the term "received" is also evidenced by the fact that some insurance contracts qualify the term, apparently to clarify the parties' intent. See, e.g., *Butkovich v. Industrial Com'n*, 690 P.2d 257 (Colo. App. 1984) (construing term in insurance policy reading "received at this office" to mean actual delivery at the home office); *Kamikawa v. Keskinen*, 44 Wis. 2d 705, 707-08, 172 N.W.2d 24, 25 (1969) (construing insurance policy which explicitly stated that coverage was effective " 'upon receipt of the premium at the company's home office and not at the time of mailing' " to require delivery of payment at insurance company's home office). It should be reiterated that we have been unable to find any authority regarding the language "received by us" as it was used in the policy issued by Universal.

An insurance policy must be construed the same as any other contract to give effect to the parties' intentions at the time that contract was made. *Amco Ins. Co. v. Norton*, 243 Neb. 444, 500 N.W.2d 542 (1993); *Economy Preferred Ins. Co. v. Mass, supra*. An ambiguity in an insurance contract " ' "must be construed against the insurer and if a policy is fairly susceptible of two constructions and one affords coverage and the other does not then the construction which affords coverage must be adopted. . . ." ' " *Central Waste Sys. v. Granite State Ins. Co.*, 231 Neb. 640, 642, 437 N.W.2d 496, 498 (1989).

As noted above, the purpose of the honesty clause is to prevent an insured from undervaluing his inventory and then correcting that valuation after the loss has occurred. The

parties to this appeal agree that Dalton mailed its report 1 day before the loss occurred. There is nothing in the record to suggest that the report submitted by Dalton is not true and accurate. Because Dalton had no control over the report after it was placed in the mail, there is no possibility that Dalton could have undervalued its inventory and then corrected the undervaluation after the loss. The purpose of the honesty clause, and the intent of the parties, is satisfied when the insured has mailed its report before the loss occurs. Therefore, if the term "received" is interpreted to mean placed in the mail, the intentions of the parties will be satisfied.

*Time of Receipt.*

A second purpose of the reporting provision is to determine the amount of premium owed by the insured. According to the insurance policy issued by Universal, the premium payment was to be mailed with the inventory report due from Dalton. Universal provided a premium calculation formula on its reporting forms so that Dalton could calculate the premium and remit it with the inventory report. Because the report of values is connected to the premium payment in reporting form insurance, authority regarding the effect of the mailing of premiums provides this court with some guidance on the effect of mailing a report of values provided by Universal.

Where the insurer has requested or acquiesced in the sending of premiums by mail, the payment is deemed to have been made at the time that it was deposited in the mail. *Tayloe v. Merchants' Fire Insurance Co.*, 50 U.S. (9 How.) 390, 13 L. Ed. 187 (1850); *Clarke v. American Concept Ins. Co.*, 758 P.2d 470 (Utah App. 1988); *American Cas. Co. of Reading v. Conn*, 741 S.W.2d 536 (Tex. Civ. App. 1987); 6 George J. Couch, Cyclopedia of Insurance Law § 31:106 (rev. 2d ed. 1985). The justification for this rule is rooted in the notion that the insurer should not be allowed to avoid liability simply because the postal service failed to act with promptness or efficiency. *Hartford Life & Annuity Ins. Co. v. Eastman*, 54 Neb. 90, 74 N.W. 394 (1898). Under this "deposit-payment" rule, it is immaterial that the loss is sustained after the premium is mailed yet before the payment arrives at the insurer's office. Couch,

*supra*, § 31:108. It is also well recognized that the insurance contract may, if the insurer desires, avoid the application of this rule by clearly specifying that payment will not be effective when mailed, but that it must be delivered to the insurer's office or post office box before taking effect. *Clarke v. American Concept Ins. Co., supra; Kamikawa v. Keskinen*, 44 Wis. 2d 705, 172 N.W.2d 24 (1969); Couch, *supra*, § 31:110.

This court can find no reason why the deposit-payment rule should not also govern the time that the report of inventory value became effective in this case. In fact, a finding that the report is effective when mailed is consistent with Nebraska law regarding the effect of mailing an acceptance to an offer, otherwise known as the deposit-acceptance rule. In *Panhandle Rehabilitation Center, Inc. v. Larson*, 205 Neb. 605, 288 N.W.2d 743 (1980), the court stated that when an offeror authorizes the transmission of acceptance by mail, the acceptance " 'is operative and completes the contract as soon as put out of the offeree's possession . . . unless the offer otherwise provides.' " *Id*. at 608, 288 N.W.2d at 745 (quoting *Anderson v. Stewart*, 149 Neb. 660, 32 N.W.2d 140 (1948)). The deposit-acceptance rule is based on the concept that because the offeror expressly or impliedly authorized acceptance via mail, the risk of delay or loss is on the offeror. *Corcoran v. Leon's, Inc.*, 126 Neb. 149, 252 N.W. 819 (1934); 17 C.J.S. *Contracts* § 52 (1963).

In this case, Universal provided Dalton with a post office box number in Omaha, Nebraska, to which reports and premiums were to be mailed, and Universal had accepted previous reports from Dalton via mail. Universal, thus, impliedly requested Dalton to send its reports via mail, or at a minimum acquiesced in Dalton's doing so.

We believe that an application of principles underlying the deposit-payment rule and the deposit-acceptance rule would best comport with the parties' intentions in this case. Just as these rules provide that the offeror may avoid the application of the rule by so providing in the offer, Universal, as drafter of the policy, could have made it clear that an inventory report would not be effective when mailed, but would only be effective when it reached Universal's office or post office box in Omaha.

Universal cites *Moultrie Intern. v. Universal Underwriters Ins. Co.*, 545 F.2d 543 (5th Cir. 1977), *reh'g denied*, 549 F.2d 203, and *Reilly-Benton Co. v. Liberty Mutual Insurance Corp.*, 260 So. 2d 797 (La. App. 1972), *aff'd* 278 So. 2d 24 (La. 1973), as support for its position that a report must be delivered to the insurer's office before it will be effective. However, in both *Moultrie Intern.* and *Reilly-Benton Co.* the insurance policy required the insured to "file" a report with the insured before the loss. In addition, there was a factual dispute in *Moultrie Intern.* over whether the report was mailed before or after the loss, and there was no postmark preserved to determine when the report was mailed by the insured. However, in this case the parties do not dispute that Dalton mailed its report on the day before the loss occurred.

## CONCLUSION

The purpose of the honesty clause in the insurance contract between Universal and Dalton was to prevent Dalton from underreporting the value of its inventory and then altering its report after a loss occurred. Both parties have stated in their briefs that Dalton mailed the report of its inventory values on May 14, 1991. Thus, it was impossible for Dalton to meretriciously alter that report after the hailstorm occurred on the evening of May 15. Because the policy did not clearly reveal that a report of inventory values was to be effective only when it actually arrived at Universal's office, and not when placed in the mail by Dalton, the report must be deemed effective when placed in the mail on May 14. This result best represents the parties' intent with regard to the honesty clause in the contract.

Therefore, the order of the district court is affirmed.

AFFIRMED.