Peggy J. QUINLAN, Plaintiff-Appellant,

v.

Lisa G. COOMBS and Heritage Mutual Insurance Co.,
Defendants,

Jeffrey A. MICHALSKI, Steven R. Seidl, and American
Family Mutual Insurance Co., Defendants-Appellants,

GENERAL CASUALTY CO. OF WIS., Defendant-Respondent,

ASSOCIATED HOSPITAL SERVICE, INC., a non-profit hospital
service corp., Intervening Plaintiff.
[Case No. 80–1973.]

Jeffrey R. MICHALSKI and Raymond J. Michalski,
Plaintiffs-Appellants,

v.

Lisa G. COOMBS, individually, and Heritage Mutual
Insurance Co., an insurance corporation,
Defendants-Respondents,

Steven R. SEIDL, individually, and American Family
Mutual Insurance Co., an insurance corporation,
Defendants-Appellants,

GENERAL CASUALTY CO. OF WIS., an insurance cor-
poration, Defendant-Respondent.
[Case No. 80–1974.]

Court of Appeals

*Nos. 80–1973, 80–1974. Submitted on briefs August 31, 1981.—
Decided October 7, 1981.*
(Also reported in 314 N.W.2d 125.)

For the plaintiffs-appellants and the defendants-appellants the cause was submitted on the brief of *Stauber, Dehn, Wynia & Kissinger* of Marshfield; *Juneau, Johns-*

*ton, Drach & Minder, S.C.* of Marshfield, and *Schmidt, Thibodeau & Schmidt* of Wisconsin Rapids.

For the defendant-respondent the cause was submitted on the brief of *Brazeau, Potter, Wefel & Nettesheim* of Wisconsin Rapids.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. This case applies an established rule of law regarding the "drive-other-cars" clause of an insurance policy to a factual situation significantly different from past opinions.

The "drive-other-cars" clause in an automobile liability insurance policy extends the driver's regular insurance to casual driving of cars other than his or her own without payment of an extra premium.[1] In order to confine the extended protection to such casual driving and to make it inapplicable to driving of cars usually at hand, the policy normally excludes from coverage other cars owned by the insured or residents of his or her household.[2] Without the limitations, a person could purchase just one policy on only one automobile and be covered by the insurance when driving an automobile that he or she frequently uses or has the opportunity to so do.[3]

In this case, Lisa Coombs, the insured, was driving Jeffrey Michalski's car when she was involved in a collision. The two were living together, though they were unmarried. A jury found that Coombs and Michalski were "residents of the household." The trial court confirmed the verdict and dismissed Coombs' insurer, General Casualty Company of Wisconsin, from the lawsuit.

---

[1] *See Voelker v. Travelers Indemn. Co.*, 260 F.2d 275 (7th Cir. 1958).

[2] *Id.*

[3] *Limpert v. Smith*, 56 Wis. 2d 632, 638, 203 N.W.2d 29, 32–33 (1973).

██

The issue on appeal is whether persons unrelatéd by blood, marriage or adoption who are living together under the same roof can be considered "residents of the same household" for policy exclusion purposes. We answer in the affirmative that unmarried persons *can* constitute residents of the same household, but whether they *are* in fact residents of the same household depends on the facts of each case.

██

The term "residents of the household" has been previously construed in *National Farmer's Union Property & Casualty Co. v. Maca*, 26 Wis. 2d 399, 132 N.W.2d 517 (1965). The plain and common meaning of the expression "residents of the household" is:

a common type of close relationship, *varying greatly in detail*, where people live together as a family in a closely knit group, *usually* because of close relationship by blood, marriage, or adoption and deal with each other intimately, informally, and not at arm's length. The intention of the members as to the duration of the relationship would seem to be important in only two aspects. The intended duration should be sufficient so as not to be inconsistent with the intimacy of the relationship, and also long enough so that it is reasonable to expect the parties to take the relationship into consideration in contracting about such matters as insurance or in their conduct in reliance thereon. [Emphasis added.]

*Id.* at 406, 132 N.W.2d at 520–21. The court in *Maca* did not limit the meaning of the term to only those instances where there is a blood relationship in the family connection.[4] Thus, we interpret *Maca* to hold that, as a matter of law, it is not necessary to be related by blood, marriage or adoption in order to be residents of the household.

---

[4] *Nat'l Farmers Union Property & Cas. Co. v. Maca*, 26 Wis. 2d 399, 408, 132 N.W.2d 517, 521–22 (1965).

Appellants argue that the phrase is ambiguous even though it has been previously construed as unambiguous by the Wisconsin Supreme Court. They argue that the term has never been considered in the context of this case. Riding on the language in *Lontkowski v. Ignarski,* 6 Wis. 2d 561, 565–66, 95 N.W.2d 230, 233 (1959), which held a policy provision to be clear "when applied to the facts" of that case, appellants apparently claim that a standard policy provision must be newly construed with each particular case if the facts are sufficiently different from previously published cases discussing the same language. Appellants reason that the facts of this case are sufficiently peculiar to warrant a finding of ambiguity. They conclude we must construe the policy provision anew and apply it strictly against the insurer in order to favor automobile coverage for the protection of the public.

We disagree with appellants' view regarding the proper breadth of *stare decisis* in insurance policy construction. The phrase "residents of the same household" has been ruled unambiguous by several supreme court decisions.[5] We conclude that appellate courts are not bound to reexamine a determination of a phrase in an insurance policy with each differing fact situation. Rather, the "plain and common" meaning is a meaning which the particular language conveys to persons of usual and ordinary understanding. The supreme court has already stated that the term is capable of plain meaning without resort to further construction. By declaring the term "residents of the household" as being capable of a plain and common meaning, the supreme court, in essence, held that this term is easily definable

---

[5] *See, e.g., Limpert v. Smith,* 56 Wis. 2d at 640, 203 N.W.2d at 33; *Pamperin v. Milwaukee Mut. Ins. Co.,* 55 Wis. 2d 27, 36–37, 197 N.W.2d 783, 788 (1972).

to the normal speaker of English. Thus, the supreme court interpreted the phrase on an objective basis derived from common experience rather than a subjective basis requiring redefinition with each changing fact situation. When difficulty comes in applying the plain meaning of the phrase to a particular fact situation, an otherwise unambiguous provision is not made ambiguous simply because it is difficult to apply to the facts of a particular case. *Lawver v. Boling,* 71 Wis. 2d 408, 422, 238 N.W.2d 514, 521 (1976). The last word on the subject comes from *Pamperin v. Milwaukee Mutual Insurance Co.,* 55 Wis. 2d 27, 37, 197 N.W.2d 783, 789 (1972), which states as follows:

We also approve the previous determinations of this court that the terms "resident or member of the same household," as used in policies of automobile liability insurance, are not ambiguous and, therefore, should be construed in light of their plain and common meaning. It makes no difference whether the terms are employed to define exclusion or inclusion from coverage, or whether the question is one of creating or terminating the relationship.

We conclude, as a matter of law, that unmarried persons can be "residents of the household" pursuant to the language in *Maca.*

This holding is not contrary to public policy as suggested by the appellants. It enhances the public trust when an insurance company offers a "drive-other-cars" provision so as to extend protection for the casual use of another vehicle by the insured. It is reasonable, therefore, to expect insurance companies to exclude coverage for autos which are or could be frequently used by the insured. It is a valid *quid pro quo* that, in return for extended coverage on casual use of other cars, the insured be prevented from being protected when using cars that can or might be used at will. Without this ex-

clusion, it is obvious that the insurance company might lose premiums and also that the hazard under the insurance would be increased.[6]

People who live in the close relationship defined in *Maca* and have the opportunity to use other cars frequently should not expect protection without paying for it. It is the closeness, and not simply the blood, marriage or adoption tie, that results in the probability of two or more automobiles being used interchangeably. As stated in *Pamperin,* 55 Wis. 2d at 36–37, 197 N.W.2d at 788, the test as to whether a person is a resident or a member of a household is dependent upon three factors:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship ". . . in their conduct."

We conclude that public policy is enhanced by permitting insurance companies to exclude coverage in those close relationship situations where an insured is driving or has the opportunity to drive cars interchangeably rather than by merely casual use. Because a relationship between people, whether married or unmarried, can bring about the opportunity to interchange cars frequently, the insurance policy can properly exclude protection for unmarried residents driving each other's cars.

This leaves the question of whether Coombs and Michalski were residents of the same household as a matter of fact. The jury determined they were, and this determination will not be upset where there is any credible evidence to support it. *Meuer v. ITT General Controls,* 90 Wis. 2d 438, 450, 280 N.W.2d 156, 162

---

[6] *George B. Wallace Co. v. State Farm Mut. Auto. Ins. Co.,* 349 P.2d 789, 791–92 (1960).

(1979). When reiterating the facts, this court will view the facts in a light most favorable to the verdict, rather than in a light most favorable to the appellant. *Id.*

The facts are that Coombs and Michalski started dating in April of 1977. In June, Lisa Coombs moved into an apartment with another woman. Four days later, Michalski moved in. Coombs and Michalski shared one bedroom; the other woman had a separate bedroom. In July, Coombs and Michalski moved into their own apartment. They continued to live together until after the December 4 accident, when both Coombs and Michalski were injured. They slept in the same bed, ate an average of two meals per day together and shopped for groceries together. They used each other's automobiles during that time.

The jury was provided with instructions which adequately presented the law to the jury. The pertinent instruction is set out in the margin.[7] Armed with the

---

[7] The instruction to the jury is as follows:

Question one, and the only question inquires whether Jeffrey Michalski was a resident of the same household as Lisa J. Coombs on December 4th, 1977.

The phrase, resident of the same household, appears in a policy of insurance issued by General Casualty Company of Wisconsin, at issue in this proceeding. Such policy has been stipulated into the record for the consideration of the Court, but will not be submitted to the jury.

You are instructed that in considering the phrase, resident of the same household, the word, household, has been defined in Webster's Dictionary as those who dwell under the same roof, and constitute a family.

Further, the phrase, resident of the same household, has been interpreted to describe a common type of close relationship varying greatly in detail, where people live together as a family in a closely knit group, usually because of close relationship by blood, marriage or adoption, and deal with each other intimately, informally, and not at arms length.

knowledge of what factors to take into consideration, the jury found Coombs and Michalski to be residents of the same household. We will not disturb the verdict.

The appellants raise one other issue. They note that Jeffrey Michalski was asked at a deposition whether he was residing in the same household as Lisa Coombs. Michalski answered "yes." Although this question was not objected to at the deposition, the appellants made a motion *in limine* just before the trial started, asking that the question and answer be excluded from the jury's attention and that it not be allowed to go to the jury. It was again objected to at trial after the motion *in limine* was denied.

The appellants claim the question asks for a layman's opinion on an issue of ultimate fact. Appellants conclude that a layman's opinion is error here because it invades the province of the jury and is prejudicial. They reason that the question submitted to the jury was whether the two were "residents of the same household"

Evidence has been received that Jeffrey Michalski and Lisa Coombs were living under one roof upon the date in question. However, living under one roof as a family is neither the sole nor the controlling test of whether a person is a resident of a household. The evidence herein presents many factors to be considered by you in answering this question besides the fact said persons were living under one roof. For example, you may consider the closeness, intimacy and informalness of the relationship of the parties, or as to whether the intended duration of the relationship was substantial. If such relationship was intended to be substantial in duration, you should consider whether such duration and the nature of the informality of the relationship would reasonably be expected to lead the parties to consider such relationship when contracting about such matters as automobile insurance. Therefore, you should consider the intent of the parties as you find it to have been shown by the evidence in reaching an answer to this question.

The burden of proof with respect to your answer to this question is upon the insurer, General Casualty Company of Wisconsin, who contends that you should answer this question yes.

and that the question asked of Jeffrey Michalski was whether he was "residing in the same household" as Lisa Coombs.

The issue has no merit. Rule 907.01, Stats., states as follows:

907.01 Opinion testimony by lay witnesses. If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

The question asked of Jeffrey Michalski was admissible as was his answer. His answer was an opinion or inference rationally based on his own perception and was helpful to the jury's determination of a fact in issue. We note the Judicial Council's Committee Note to Rule 907.01, Stats., as follows:

The recent Wisconsin cases are in accord with this section. The simplistic and erroneous view that lay witnesses may testify only to fact, not opinion, was rejected in *Bennett v. State*, 54 Wis. 2d 727, 735, 196 N.W. 2d 704, 708 (1972), and *York v. State*, 45 Wis. 2d 550, 173 N.W.2d 693 (1970). Other Wisconsin cases are in agreement, *Milwaukee v. Berry*, 44 Wis. 2d 321, 171 N.W.2d 305 (1969); *Trible v. Tower Ins. Co.*, 43 Wis. 2d 172, 168 N.W.2d 148 (1969); *Milwaukee v. Bichel*, 35 Wis. 2d 66, 150 N.W.2d 419 (1967); *Cullen v. State*, 26 Wis. 2d 652, 133 N.W.2d 284 (1965), certiorari denied *Howard v. Wisconsin*, 86 S. Ct. 126, 382 U.S. 863, 15 L. Ed 2d 101. Note that the rule is applicable when the witness is not testifying as an expert.

We also note Rule 907.04, Stats.:

Opinion on ultimate issue. Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Obviously, General Casualty had the right to elicit basic facts from Michalski in order to establish whether he and Coombs were living together under the same roof in a close relationship. The question of whether he and Coombs were residing in the same household is nothing more than a search for a basic fact, narrative or historical in nature, and helpful to the determination of a fact in issue. The question and answer was primarily descriptive and not dispositive in nature.[8]

Accordingly, we affirm the judgment dismissing General Casualty from the case.

*By the Court.*—Judgment affirmed.

---

[8] Furthermore, the failure to make a timely objection to the question and answer at deposition amounts to waiver, and the trial court so ruled. Section 804.07, Stats., deals with the use of depositions at court proceedings. Section 804.07(3)(c), Stats., provides that failure to object at a deposition will not result in waiver "unless the ground of the objection is one which might have been obviated or removed if presented at that time."

Had there been an objection at the deposition to the form of the question, the questioner could have reformulated the inquiry to use some synonym such as "dwelling" or "inhabiting" in place of "residing." Additionally, the questioner could have used "lodging," "domicile" or "quarters" instead of the word "household" in order to elicit from Michalski that he and Lisa Coombs were living together under the same roof.