AMCO INSURANCE COMPANY, APPELLANT, V. TODD R. NORTON ET AL., APPELLEES.
500 N.W.2d 542

Filed May 21, 1993.   No. S-91-261.

Michael A. England, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellant.

T.J. Hallinan, of Cobb, Hallinan & Ehrlich, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

The plaintiff-appellant, Amco Insurance Company, seeks a declaration that the homeowners policy it issued to the defendants-appellees Todd R. and Cindy S. Norton, husband and wife, does not provide coverage for the bodily injury sustained by their niece, the defendant-appellee Kristine K. Fox. Finding that the policy does provide such coverage, the district court granted the defendants' motion for summary judgment. Amco has appealed, assigning that ruling as error. We affirm.

We begin by recalling once again that summary judgment is to be granted only when the record discloses that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See, *Viking Broadcasting Corp. v. Snell Publishing Co., ante* p. 92, 497 N.W.2d 383 (1993); *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993).

We also bear in mind that an insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made, *Economy Preferred Ins. Co. v. Mass*, 242 Neb. 842, 497 N.W.2d 6 (1993), and that it is the insurer who bears the burden of establishing that an event falls within an exclusionary clause, *id*. and *Jaramillo v. Mercury Ins. Co.*, 242 Neb. 223, 494 N.W.2d 335 (1993).

With those precepts before us, we begin our analysis by noting that under the policy, Amco agreed to pay damages for bodily injury sustained in an accident occurring at the Nortons' dwelling, unless the injury was suffered by an insured. "Insured" is defined by the policy as consisting of the Nortons, as the named insureds, and their relatives if "residents of [the named insureds'] household."

Because the Nortons had two small children and were expecting a third, they engaged their 17-year-old niece to be a babysitter for them during the summer of 1989 until she resumed her schooling in August. During the relevant time, the niece lived and worked at the Nortons' dwelling on weekdays and an occasional Saturday, watching the Norton children and preparing meals as needed. She was paid an hourly wage, but was not charged for room or food. Initially, she shared a room with the Nortons' daughter, but soon relocated to a couch.

The niece did not take all of her clothes, jewelry, furniture, or other possessions to the Nortons', and she continued to receive mail and telephone calls at her parents' house, some 17 miles away.

The niece remained at the Nortons' dwelling on Sunday, July 2, because she was planning to ride with them to a family reunion. While waiting to make the trip, she helped the husband construct a swing set and, in the course of doing so, sustained an accidental bodily injury.

Although under the circumstances involved here one's status as an insured is dependent upon being both a relative of the Nortons and a resident of their household, the policy defines neither the word "relative" nor the phrase "residents of [the named insureds'] household."

In defining these terms, we conclude that the niece

indisputably qualifies as a relative. *Insurance Co. of North America v. Stevens*, 425 F.2d 704 (5th Cir. 1970) (nephew is a relative); *Adams v. Simpson*, 358 Mo. 168, 213 S.W.2d 908 (1948) (nieces and nephews are relatives of testator). Indeed, none of the parties claim otherwise. Thus, the resolution of this case depends upon whether the niece was, at the time of her injury, a resident of the Nortons' household.

We have previously declared that for purposes of an omnibus clause extending liability coverage to members of the named insured's household, the term "household" means " '[t]hose who dwell under the same roof and compose a family.' " *Andrews v. Commercial Casualty Ins. Co.*, 128 Neb. 496, 500, 259 N.W. 653, 655 (1935), quoting Webster's Dictionary. Accord, *Allied Mut. Ins. Co. v. Musil*, 242 Neb. 64, 493 N.W.2d 171 (1992); *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971).

We have also observed that " '[t]o reside' and its corresponding noun *residence* are chameleon-like expressions, which take their color of meaning from the context in which they are found." (Emphasis in original.) *Huffman v. Huffman*, 232 Neb. 742, 749, 441 N.W.2d 899, 904 (1989). The word "residence" has been described as being "like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense." *State v. Tustin*, 322 S.W.2d 179, 180 (Mo. App. 1959).

Our Legislature has found occasion to define "residence" for purposes of elections as "that place at which a person has established his home, where he is habitually present, and to which when he departs he intends to return." Neb. Rev. Stat. § 32-107 (Reissue 1988). Moreover, our solons have declared that in regard to special education, the "[r]esidence of a child shall mean the legal residence of the parent or legal guardian." Neb. Rev. Stat. § 79-3311 (Reissue 1987).

For purposes of a dissolution action, this court has declared that "residence is the result of or achieved by a person's physical presence and living at a location and does not require an intention to stay permanently in the location." *Huffman v. Huffman*, 232 Neb. at 749, 441 N.W.2d at 904.

And in *Allied Mut. Ins. Co. v. Musil*, we held that a son who

lived with his parents at the time of the questioned accident, whose parents maintained a room for him at their home while he attended college, who made frequent trips home during the school year, and who maintained his local checking account and local church membership was a resident of the parents' household, notwithstanding that he lived elsewhere during the months he attended a university.

But neither our statutory law nor our case law has heretofore settled upon the meaning of "resident," as used in a homeowners insurance policy which does not itself define the word. In now undertaking that task, we look to the decisions of other jurisdictions for guidance.

Citing *Hanson v. P. A. Peterson Home Ass'n*, 35 Ill. App. 2d 134, 182 N.E.2d 237 (1962), Black's Law Dictionary 1309 (6th ed. 1990) states that " 'resident' when used as a noun, means a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it signifies one having a residence, or one who resides or abides."

The phrase "residents of the named insured's household" has been held by a Florida court to mean that a " 'resident is more than a mere visitor or transient, but lives at a place with additional attachments of such significance as to render that person a more or less consistent part of the community.' " *Puente v. Arroyo*, 366 So. 2d 857, 858 (Fla. App. 1979), *cert. denied* 376 So. 2d 75 (Fla.).

The Wisconsin Supreme Court defined "resident of the household" for purposes of a farm insurance policy in *National Farmers Union P. & Cas. Co. v. Maca*, 26 Wis. 2d 399, 408, 132 N.W.2d 517, 521-22 (1965):

> We think that one is not a resident of the household or member of the family if, even though he has no other place of abode, he comes under the family roof for a definite short period or for an indefinite period under such circumstances that an early termination is highly probable. If, however, the circumstances of his stay are otherwise consistent with a family or household relationship, and his stay is likely to be of substantial duration, the fact that he attempts to find employment, gaining which he would live elsewhere, would not, in our

opinion, prevent his being a resident of the household or a member of the family.

It has also been noted that "no one factor is controlling but that all of the elements must combine to a greater or lesser degree in order to establish the relationship." *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis. 2d 27, 37, 197 N.W.2d 783, 789 (1972).

In defining the phrase "residents of the same household," Washington courts have considered the intent of the person in question, the formality or informality of the relationship between that person and the members of the household at issue, the relative propinquity of the dwelling units, and the existence of another place of lodging for the person in question. See, *GMAC v. Grange Insurance*, 38 Wash. App. 6, 684 P.2d 744 (1984), *review denied* 102 Wash. 2d 1015; *Pierce v. Aetna Cas. and Surety Co.*, 29 Wash. App. 32, 627 P.2d 152 (1981).

A Colorado court has held that for purposes of interpreting the phrase "residents of [the insured's] household," the following factors are important: the subjective or declared intent of the individual, the formality or informality of the relationship between the individual and the members of the household, the existence of another place of lodging by the alleged resident, and the relative permanence or transient nature of the individual's residence in the household. *Iowa Nat'l Mutual Ins. v. Boatright*, 33 Colo. App. 124, 516 P.2d 439 (1973).

In determining whether an individual is a "resident of the same household," the Arizona courts consider: the individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances relating to the absence or presence; the relationship of the individual to the named insured; the living arrangements of the individual in earlier time periods; the individual's subjective or declared intent with respect to the place of residence; and the existence of a second place of lodging. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 151 Ariz. 591, 729 P.2d 945 (Ariz. App. 1986); *Mid-Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 641 P.2d 1272 (1982).

Wisconsin utilizes a tripartite test in applying "resident or

member of a household" where the persons in question are living under the same roof; in a close, intimate, and informal relationship; and where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship " 'in contracting about such matters as insurance or in their conduct in reliance thereon.' " *Pamperin v. Milwaukee Mutual Ins. Co.*, 55 Wis. 2d at 37, 197 N.W.2d at 788-89, quoting *National Farmers Union P. & Cas. Co. v. Maca, supra.*

The Wisconsin approach has been embraced by the courts of Minnesota, e.g., *Mutual Service Cas. Ins. Co. v. Olson*, 402 N.W.2d 621 (Minn. App. 1987), which also look to the following factors: the age of the person, whether a separate residence is established, the self-sufficiency of the person, the frequency and duration of the stay in the family home, and the intent to return. *Wood v. Mutual Service Cas. Ins. Co.*, 415 N.W.2d 748 (Minn. App. 1987).

It is obvious from the review of the foregoing decisions that "resident" is an elastic and amorphous word having different shades of meaning depending upon the context in which it is employed. Moreover, as a general rule, a person can have more than one place of residence. See, also, *State v. Jones*, 202 Neb. 488, 275 N.W.2d 851 (1979); *Mutual Service Cas. Ins. Co. v. Olson, supra.* Those being the circumstances, we conclude that for purposes of a homeowners insurance policy which does not otherwise define the phrase, "resident of the named insureds' household" means one who dwells or has an abode under the same roof as the named insureds for a duration of sufficient length so that the occupiers can be said to compose a family. The factors to be considered in determining whether that test has been met include, but are not limited to, the intent of the parties, the formality of the relationship between the person in question and the members of the named insureds' household, the permanence or transient nature of that person's residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person.

The record here reveals that it was the manifest intent of the parties for the niece to remain at the Nortons' dwelling only

during the summer months, and then merely during the weekdays and an occasional Saturday. That she was being compensated for her time and services casts a shadow of formality on the relationship, notwithstanding the fact that she was a relative. Furthermore, the record is barren of any evidence indicating any degree of permanence in the living arrangement. Indeed, it appears the niece took with her only those belongings necessary for her brief stays at the Nortons' dwelling and that she continued to receive her mail and telephone messages at her parents' home. Moreover, the record fails to establish that she was emancipated and was no longer dependent upon her parents for the necessities of life. Additionally noteworthy is that after her injury, the niece returned to her parents' home, not the Nortons' dwelling.

There being no genuine issue as to any material fact or as to the ultimate inferences which may be drawn from those facts, and the defendants being entitled to judgment as a matter of law, the judgment of the district court is affirmed.

The defendants, having moved for an attorney fee and having complied with Neb. Ct. R. of Prac. 9F (rev. 1992), are awarded the sum of $3,000 to apply toward the services and expenses of their attorneys in this court.

AFFIRMED.