SHARON MOLLER, CONSERVATOR OF RHIANNON MOLLER, A MINOR, APPELLANT, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLEE.

566 N.W.2d 382

Filed June 27, 1997.   No. S-95-905.

Thomas A. Gleason for appellant.

Wayne J. Mark and James A. Mullen, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

Sharon Moller, conservator of Rhiannon Moller, sued State Farm Mutual Automobile Insurance Company (State Farm), claiming that Rhiannon was an insured under the terms of an underinsured motorist provision in an insurance policy issued to Gary Moller, Rhiannon's father. State Farm had denied coverage for personal injuries sustained by Rhiannon in an automobile accident. The district court entered judgment in favor of State Farm, and Sharon appeals.

## SCOPE OF REVIEW

The interpretation and construction of an insurance contract or policy involve questions of law, in connection with which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. *Luedke v. United Fire & Cas. Co., ante* p. 182, 561 N.W.2d 206 (1997); *Kast v. American-Amicable Life Ins. Co.*, 251 Neb. 698, 559 N.W.2d 460 (1997).

Whether an insurance contract is ambiguous and therefore in need of construction is a question of law. *Kast, supra*; *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995).

## FACTS

On January 8, 1993, Rhiannon was a passenger in a motor vehicle which was involved in a collision. The sole and proxi-

mate cause of the collision was the negligence of the operator of the vehicle. The parties stipulated that as a direct and proximate result of the collision, Rhiannon sustained serious physical injuries and that the value of Rhiannon's claim for injuries and damages exceeded $141,666.

Sharon and the representatives of the two other passengers in the vehicle exhausted the coverage of the underinsured driver's liability insurance policy, each collecting one-third of the $50,000 maximum coverage. Sharon carried $25,000 in underinsured motorist coverage on her State Farm automobile insurance policy, which State Farm paid.

Gary had a separate automobile insurance policy issued by State Farm which provided for $100,000 in underinsured motorist coverage. The parties stipulated that the provisions of this policy were in full force and effect at the time of the accident on January 8, 1993, and that the only issue to be decided in this case is whether or not Rhiannon qualifies as an insured under Gary's policy.

Section III of Gary's policy provided:

**UNDERINSURED MOTOR VEHICLE - COVERAGE W**

. . . .

**Who Is an Insured - Coverages U and W**

*Insured* - means the *person* or *persons* covered by uninsured motor vehicle or underinsured motor vehicle coverages.

This is:

1. the first *person* named in the declarations;
2. his or her *spouse*;
3. their *relatives* . . . .

According to the definitions section of the policy, "*[r]elative* - means a *person* related to *you* or *your spouse* by blood, marriage or adoption who lives with *you*. It includes *your* unmarried and unemancipated child away at school."

Gary and Sharon had divorced on January 3, 1984. The divorce decree provided that Sharon had physical custody of Rhiannon and her brother, but that Gary was entitled to visitation every other weekend from 6 p.m. on Friday to 6 p.m. on Sunday and one evening per week from 4 to 9 p.m. Gary was

also entitled to have the children with him on alternate holidays and birthdays.

Gary and Sharon reconciled 8 months after the divorce. They lived together as a family unit from August 1984 until June 1992, except for one separation from November 1989 until August 1990. At the time Gary's policy was issued, he was living with the family.

In June 1992, Gary and Sharon separated for the final time. Sharon and the children moved into a residence located about a mile away. Gary remained at the previous home, and when the children visited overnight, they stayed in the rooms they had before the separation. Gary remained at this home until his marriage to his present wife in February 1994.

The parties stipulated that after the final separation, Gary maintained a relationship with Rhiannon and her brother, the nature and extent of which is described in the depositions offered into evidence. The depositions reflect that Gary's job as a railroad engineer prevented him from following the exact terms of the divorce decree, but he continued visitation with Rhiannon on a regular basis. His job required him to be on call 24 hours per day, and because Gary and Sharon agreed that the children should not spend the night alone when Gary was called to work, there were occasions when he returned Rhiannon to Sharon's home. Thus, Rhiannon actually spent the night at Gary's house approximately once every 2 weeks.

More often, Rhiannon would visit Gary's home without intending to stay overnight. Gary's home was located four to five blocks from Rhiannon's school, and a couple of times per week, Rhiannon stopped by the house with her friends or brother to have a bite to eat. These visits averaged twice per week, but sometimes varied. Some weeks Rhiannon stopped every night, sometimes only once or twice per week, and some weeks not at all.

Rhiannon kept some clothes and toiletries at Gary's house. Gary provided Rhiannon with spending money when she visited, routinely paid for the purchase of her clothes and personal possessions, and took her out to eat. Gary claimed Rhiannon as a dependent on his tax returns since 1984, and he maintained health insurance for her since the date of the divorce decree.

## ASSIGNMENTS OF ERROR

Sharon assigns as error that the district court erroneously held that the phrase "lives with" is clear and unambiguous and that applying the plain meaning of "lives with," Rhiannon "lived with" Sharon and did not "live with" Gary.

## ANALYSIS

The issue presented is whether, under the terms of the underinsured motorist provision in the policy issued to Gary, Rhiannon qualified as a "relative," so as to be insured under the policy. The policy defines a relative as "a *person* related to *you* or *your spouse* by blood, marriage or adoption who lives with *you*. It includes *your* unmarried and unemancipated child away at school." It is undisputed that Rhiannon is the natural child of Gary and that she was not away at school at the time of the accident. Thus, the issue is whether Rhiannon "lived with" Gary. The policy itself does not provide a definition of the phrase "lives with."

In interpreting contracts, the court as a matter of law must first determine whether the contract is ambiguous. *Krzycki v. Genoa Nat. Bank*, 242 Neb. 819, 496 N.W.2d 916 (1993). Whether a contract is ambiguous is a question of law. *Kast v. American-Amicable Life Ins. Co.*, 251 Neb. 698, 559 N.W.2d 460 (1997); *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994).

An instrument is ambiguous if a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996); *Krzycki, supra*; *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). "The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous." *Knox*, 233 Neb. at 391, 446 N.W.2d at 4.

Sharon argues that the phrase "lives with" is ambiguous, or, alternatively, that the phrase clearly includes Rhiannon's relationship with Gary. State Farm claims that the phrase "lives with" is not ambiguous and that Rhiannon does not "live with" Gary. We have not previously interpreted the phrase "lives

with" as it defines an insured in a policy of insurance, and therefore, this case presents a matter of first impression.

The parties stipulated to many of the facts, and the remaining facts set forth in the depositions of the parties are not in dispute. Therefore, since there are no material issues of fact in dispute, our interpretation of the terms and conditions of the insurance policy is a question of law. When the terms of a contract and the facts and circumstances that aid in ascertaining the intent of the parties are insufficient to raise an issue of fact, the interpretation of the contract is a matter of law. *Don J. McMurray Co. v. Wiesman*, 199 Neb. 494, 260 N.W.2d 196 (1977); *Nebraska Im-Pruv-All, Inc. v. Sass*, 197 Neb. 261, 247 N.W.2d 924 (1976).

The cases from other jurisdictions are split on whether the phrase "lives with" is ambiguous. In *Casolari v. Pipkins*, 253 Ill. App. 3d 265, 624 N.E.2d 429 (1993), the court held that the phrase "lives with" used in the definition of a "relative" in an uninsured motorist policy provision was ambiguous. The court concluded that a minor daughter who was killed in a car accident had lived with her father despite the fact that she was normally present at her father's residence on alternating 3-day weekends only. The court noted that on at least two occasions, the daughter spent a few weeks with her father. She kept clothes and toys at one of her father's residences, and when she stayed with her father, she was subject to his care and custody.

Similarly, in *Davis v. State Farm Mut. Auto. Ins. Co.*, 583 So. 2d 225 (Ala. 1991), the court determined that the phrase "lives with" was ambiguous and that a person can live at more than one place at the same time. Earlier, in *Withers v. State Farm Mut. Auto. Ins.*, 580 So. 2d 582 (Ala. 1991), the court had held that a child "lived with" both his mother and his father despite the fact that the father was the primary custodial parent, the child received his mail at his father's address, the child listed that address on his learner's permit, the child spent the vast majority of free time at his father's address, and the child's brother stated that they referred to their father's home as their home. The court noted that the child also spent a considerable amount of time at his mother's house.

In contrast, in *Stoner v. State Farm Mut. Auto. Ins. Co.*, 780 F.2d 1414 (8th Cir. 1986), the court, in applying South Dakota

law, concluded that the phrase "lives with you" was unambiguous. The court found that unlike legal residence or domicile, which have specific legal meanings apart from their ordinary usage, the phrase "lives with you" was susceptible of only one interpretation, that is, actually living in fact. Thus, the court determined that the insured's 21-year-old daughter who was enlisted in the Navy and stationed away from her father's residence did not "live with" her father.

In *State Farm Mutual Auto. Ins. Co. v. Taussig*, 227 Ill. App. 3d 913, 592 N.E.2d 332 (1992), the court addressed whether a person was a "relative" under an automobile liability policy. In *Taussig*, the insured's son sought coverage as a relative even though he had recently moved into his own apartment where he slept and ate most of his meals. Although the son was financially assisted by his father, the son had a full-time job. The court held that the phrase "lives with" was unambiguous and went on to conclude that the son did not "live with" his father. Despite the fact that the son had left a number of personal items at his father's home, considered that home to be his permanent address, and visited the home at least once a week, the court concluded that the evidence was not sufficient to meet the "living with" standard for purposes of that insurance policy.

In *State Farm Mut. Auto. Ins. Co. v. Novak*, 167 Ariz. 363, 807 P.2d 531 (Ariz. App. 1990), the court held that the phrase "lives with" was not ambiguous and that the insured's 16-year-old daughter, who had moved out of her parents' home and into an apartment with her boyfriend in hopes that they would marry, did not "live with" her parents. The court noted that with the exception of one 10-day period, the daughter lived continuously in the apartment. In holding for the insurer, the court relied upon six factors: (1) presence in or absence from the parents' home, (2) reasons or circumstances relating to presence or absence, (3) the relationship of the child with the parents, (4) the child's living arrangement in earlier time periods, (5) the child's subjective or declared intent with respect to place of residence on the day of the accident, and (6) whether the child had a second place of lodging on the day of the accident.

In the case at bar, the district court found that the phrase "lives with" was clear and unambiguous. Applying the rules of

construction set forth above, we also find as a matter of law that the phrase is not ambiguous. Interpretation of an unambiguous term or provision in an insurance policy presents a question of law. *Kast v. American-Amicable Life Ins. Co.*, 251 Neb. 698, 559 N.W.2d 460 (1997). Thus, when the terms of the policy are clear and unambiguous, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Id.; Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996).

In ascertaining the plain meaning of the phrase "lives with," we find particularly instructive *Tokley v. State Farm Ins. Companies*, 782 F. Supp. 1375 (D.S.D. 1992). In *Tokley*, the question was whether an unemancipated child of divorced parents could be an insured relative of the noncustodial parent. The policy provisions were essentially identical to those of the policy in the present case. The court concluded that where the extent of the relationship and the contacts between the child and the noncustodial parent were of the duration and regularity presented, it would adopt the generally accepted view that the child lived with both parents.

In *Tokley*, the child stayed overnight at his father's house two or three weekends per month and had his own room at his father's house, decorated to his own taste, with personal belongings kept there. The child would often stop by his father's home after school for visits. The record reflected that the child spent a significant amount of time in both households and felt at home in either place.

The court in *Tokley* concluded that the policy language was not ambiguous. In determining that under the unambiguous terms of the policy, the child "lived with" his father, the court in *Tokley* reasoned that the policy provisions and corresponding definitions were terms that defined persons to whom coverage was extended and were therefore inclusionary clauses. See, also, *Row v. United Services Auto. Ass'n*, 474 So. 2d 348 (Fla. App. 1985). The court in *Tokley* quoted *Novak v. State Farm Mut. Auto. Ins. Co.*, 293 N.W.2d 452 (S.D. 1980), for the proposition that "'[w]here the policy provision under examination relates to the inclusion of persons other than the named insured

within the protection afforded, a broad and liberal view is taken of the coverage extended.' " *Tokley*, 782 F. Supp. at 1379. The court in *Tokley* further reasoned: "[T]he phrase 'lives with you' should reflect the contemporary realities of family living and should not be narrow and strait-jacketed to apply only to idealized notions of a pristine family unit, harmonious and integrated." *Id.*

Regardless of whether we construe the policy as of the date of the agreement or as of the time of the accident, when we consider the plain meaning of the phrase as the ordinary reasonable person would understand it, we conclude that Rhiannon is afforded coverage under the terms of the policy.

We note that the relevant definition of "live" in Webster's Third New International Dictionary, Unabridged 1323 (1993) provides that to live is "to occupy a home: DWELL, RESIDE." The terms "dwell" and "occupy" both refer to "reside." See *id.* at 706, 1561. Under "reside," Webster's explains that "LIVE is the more general word for indicating that one has one's home in a place." *Id.* at 1931.

The term "home" is defined, among other ways, as "the family environment to which one is emotionally attached." *Id.* at 1082. Combining the various definitions of "home" with common usage, we agree with the court in *Nationwide Mut. Ins. Co. v. Budd-Baldwin*, 947 F.2d 1098, 1102 (3d Cir. 1991), that the word "home"

> connotes a place where one belongs and can always go with the certainty that he will be taken in. It connotes not only a physical place, i.e. the place where one eats meals, sleeps, socializes and generally spends time when not "otherwise engaged with the activities of life," but a sense of belonging.

Given the contemporary realities of family living noted by the court in *Tokley*, we determine that the average, reasonable person would broadly construe the phrase "lives with" to include an unemancipated child's relationship with both parents where that child reasonably feels that he or she "belongs" at either home.

We note that in the coverage provision in question, State Farm did not qualify or limit the phrase "lives with." Moreover,

as was the case in *Tokley*, the phrase "lives with" is contained in a provision of inclusion rather than exclusion. Limitation of the phrase "lives with" to include only one residence or other similar limitations may be written into the policy by an insurer if it elects to do so. See *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995).

At the time of the accident, Rhiannon was unmarried and unemancipated, and she was related to Gary as his daughter. Because the relevant facts are undisputed, we find as a matter of law that at this time, Rhiannon "lived with" Gary. As such, Rhiannon was an insured "relative" under Gary's policy.

## CONCLUSION

The judgment of the district court is reversed, and the cause is remanded with directions to enter judgment in favor of Sharon, Rhiannon's conservator, in the amount of $75,000 in accordance with the written stipulation of the parties.

REVERSED AND REMANDED WITH DIRECTIONS.