LIA BRADFORD SHIVVERS, APPELLANT, V. AMERICAN FAMILY
INSURANCE CO., APPELLEE, PRUDENTIAL INSURANCE COMPANY,
APPELLEE AND CROSS-APPELLEE, AND STEPHANIE (LA PLANTE)
ROBERTSON, APPELLEE AND CROSS-APPELLANT.

589 N.W. 2d 129

Filed February 12, 1999.    No. S-97-1153.

Andrew W. Snyder, of The Van Steenberg Firm, for appellant.

Stefan T. Wall and Patrick M. Connealy, of Crites, Shaffer, Connealy, Watson & Harford, for appellee American Family.

Terry Curtiss, of Curtiss, Moravek, Curtiss & Margheim, for appellee Prudential.

Martin J. Troshynski, of Kelley, Scritsmier & Byrne, P.C., for appellee Robertson.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER- LERMAN, JJ.

STEPHAN, J.

Lia Bradford Shivvers was injured as the result of a single-véhicle accident which occurred on December 28, 1993, while she was a passenger in a vehicle owned and operated by her roommate of 10 days, Stephanie (La Plante) Robertson. At the time of the accident, Robertson was insured by Prudential Insurance Company, which denied coverage with respect to Shivvers' personal injury claim against Robertson on grounds that the two women resided in the same household and thus fell within a liability coverage exclusion contained in the Prudential policy. American Family Insurance Co., which insured Shivvers, denied liability to her under its uninsured and underinsured motorist coverage on the same grounds. In this declaratory judgment action, the district court for Sheridan County determined that Shivvers and Robertson resided in the same household at

the time of the accident and that the household exclusions contained in both the Prudential and American Family policies were therefore applicable. On Shivvers' appeal, we conclude as a matter of law that the arrangements under which Shivvers and Robertson resided together did not constitute a household. Therefore, we reverse the judgment of the district court.

## FACTS AND PROCEDURAL BACKGROUND

Shivvers and Robertson are not related by blood or marriage. They met each other through a mutual acquaintance who knew that the two women, then unmarried and in their early twenties, were considering moving to the same locale for the purpose of carrying out their ministries as Jehovah's Witnesses. After some discussion, the two decided to move to Chadron, Nebraska, and live together there for purposes of financial convenience. Prior to sharing a residence, the women agreed to divide all expenses equally and each agreed to pay for her own telephone calls. They moved into a house in Chadron on December 18, 1993, with each maintaining a separate bedroom as her private area. After a short period, they moved to an apartment in Chadron. Following the move, the women again split the rent and other living expenses and maintained separate bedrooms.

Shivvers and Robertson each purchased her own groceries but would sometimes shop together and split the cost. Each woman provided a portion of furniture for the common areas of the residence, and each provided her own bedroom furniture. The women testified that they spent time together as part of their religious work and took turns driving their own vehicles in order to do so, but otherwise spent approximately 3 hours or less each day together. The women generally did not eat meals together, had separate friends, and maintained separate bank accounts. Both women testified in their depositions that they shared living arrangements out of financial necessity in order to save money and that neither considered herself to be living with the other as a family. Shivvers further testified that her original goal was to stay in Chadron for 1 year. At the end of the arrangement, approximately 11 months after they first shared a house together, both women returned to their parents' homes in another state.

At the time of the accident, Robertson was insured under a "Car Policy" issued by Prudential. In a section entitled "Losses We Will Not Pay For (Part 1)," under the subheading "Household Residents," the policy stated: "We will not pay for bodily injury to you or a household resident if caused by you or a household resident. We will not defend you or a household resident in any suits brought against each other directly or indirectly by a third party." The policy defined "household resident" as "someone who lives in your household. A household resident includes a "resident relative." The term "resident relative" is defined by the policy as "someone who lives in your household and is related to you by blood, marriage, adoption or is a ward or foster child." The Prudential policy does not define the term "household."

On the date of the accident, Shivvers was insured under a "Family Car Policy" issued by American Family. The policy stated in part:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle.

The policy further provided that the term "uninsured motor vehicle" did not include a vehicle "owned by or furnished or available for the regular use of you or any resident of your household." The uninsured motorist coverage contained an exclusion stating that it did not apply to bodily injury to a person "[w]hile occupying . . . a motor vehicle that is not insured under this Part, if it is owned by you or any resident of your household." The American Family policy also contained an underinsured motorist coverage endorsement containing a similar exclusion. The policy does not define the term "household" or the phrase "any resident of your household."

Shivvers originally filed this action against American Family, in which action she alleged that because coverage for her claim was excluded by the Prudential policy, she was therefore entitled to coverage under her uninsured and underinsured motorist coverage with American Family. Robertson and Prudential were

later joined in the action. In their answers, Prudential and American Family denied that their policies provided coverage for Shivvers' claim against Robertson. Robertson filed an answer, alleging that Prudential had undertaken defense on her behalf in a related case between Shivvers and Robertson and was therefore estopped from denying coverage. She sought an order recognizing her claim of estoppel or, in the alternative, declaring that the Prudential policy provided coverage for Shivvers' claim. Robertson also asserted a cross-claim against Prudential, alleging that it acted in bad faith in denying coverage under its policy.

Shivvers filed a motion for summary judgment "regarding the issue of . . . Prudential Insurance Company's liability" and the applicability of the household exclusion clause contained in the Prudential Policy. Prudential moved for summary judgment on the ground that its policy provided no coverage for Shivvers' claim against Robertson because of the exclusion. American Family also moved for summary judgment, asserting that it had no liability to Shivvers by virtue of the household exclusion contained in its policy. Robertson moved for partial summary judgment against Prudential, asserting as a matter of law that Prudential's policy provided coverage for Shivvers' claim against her.

In ruling on these motions, the district court determined that (1) Shivvers and Robertson lived together in Chadron, (2) the women had no other residence, and (3) the women shared the costs and responsibilities of the apartment they maintained. The district court found that the women were " 'household residents' " within the meaning of Prudential's policy. With regard to Shivvers' policy with American Family, the district court found that pursuant to our decision in *Amco Ins. Co. v. Norton*, 243 Neb. 444, 500 N.W.2d 542 (1993), Shivvers and Robertson were members of the same household and that the "'household exclusion'" in the policy was therefore applicable. Accordingly, the district court sustained both insurance companies' motions for summary judgment and denied the motions of Shivvers and Robertson. Shivvers appealed, and Robertson filed a cross-appeal with respect to her claim that Prudential had denied coverage in bad faith. We granted Shivvers' motion to bypass.

## ASSIGNMENTS OF ERROR

Shivvers assigns that the district court erred in granting summary judgment to Prudential and American Family and in overruling the motions for summary judgment of Shivvers and Robertson. Shivvers further assigns that the district court erred in its determination that she and Robertson were members of the same household within the meaning of each of the insurance policies. On cross-appeal, Robertson assigns that the district court erred in granting Prudential's motion for summary judgment and denying her own motion.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998); *Stiver v. Allsup, Inc.*, 255 Neb. 687, 587 N.W.2d 77 (1998).

Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over all motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998).

The interpretation and construction of an insurance contract or policy involve questions of law, in connection with which an appellate court has an obligation to reach its conclusions independent of the determinations made by the court below. *Id.*; *Moller v. State Farm Mut. Auto. Ins. Co.*, 252 Neb. 722, 566 N.W.2d 382 (1997).

## ANALYSIS

It is undisputed that Shivvers and Robertson resided under the same roof at the time of Shivvers' injury. The issue before us is whether they were residents of a single "household" as that

term is used in the coverage exclusions contained in both insurance policies. We have recognized that the parties to an insurance contract may contract for any lawful coverage, and an insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. *Hemenway, supra.* We held in *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993), that a household exclusion clause contained in a policy of motor vehicle liability insurance that is not used as proof of future financial responsibility under Nebraska's Motor Vehicle Safety Responsibility Act does not violate public policy and is enforceable. See, also, *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993), citing *Hildebrand, supra.* In the present case, the parties do not contend, nor does the record reflect, that the policies in question were issued as proof of financial responsibility as required by this act.

As in the interpretation of any contract, we must first determine whether the policy language at issue is ambiguous. See *Moller, supra.* Whether an insurance contract is ambiguous is a question of law. *Id.*; *Kast v. American-Amicable Life Ins. Co.*, 251 Neb. 698, 559 N.W.2d 460 (1997). An instrument is ambiguous if a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Moller, supra*; *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996). The fact that parties to a contract suggest different interpretations of its language does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Moller, supra*; *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989). In appellate review of an insurance policy, the policy must be construed as any other contract and effect must be given to the parties' intentions at the time the contract was made. Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning. *Moller, supra.* The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them. *Hemenway, supra.*

In *Hildebrand*, 243 Neb. at 745, 502 N.W.2d at 471, we found no ambiguity in an exclusion which provided that liabil-

ity coverage would not be provided to " '[a]ny insured or any member of an insured's family residing in the insured's household.' " Similarly, Wisconsin courts have held that the phrase "resident or member of the same household" as used in automobile liability insurance policies is not ambiguous and should be construed in light of its plain and common meaning. See, *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis. 2d 27, 197 N.W.2d 783 (1972); *Quinlan v. Coombs*, 105 Wis. 2d 330, 314 N.W.2d 125 (Wis. App. 1981). We agree with the observation of the court in *Quinlan* that "an otherwise unambiguous provision is not made ambiguous simply because it is difficult to apply to the facts of a particular case." *Id.* at 335, 314 N.W.2d at 128. The household exclusions at issue in this case are not ambiguous, and they must therefore be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. See, *Moller, supra*; *Kast, supra.*

The critical term "household" is not specifically defined by either policy. In construing other provisions in motor vehicle liability insurance policies, we have held that the term "household" means " ' " ' [t]hose who dwell under the same roof and compose a family.' " ' " *Allied Mut. Ins. Co. v. Musil*, 242 Neb. 64, 68, 493 N.W.2d 171, 174 (1992), citing *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971), quoting *Andrews v. Commercial Casualty Ins. Co.*, 128 Neb. 496, 259 N.W. 653 (1935). In *Amco Ins. Co. v. Norton*, 243 Neb. 444, 450, 500 N.W.2d 542, 546-47 (1993), we stated:

> for purposes of a homeowners insurance policy which does not otherwise define the phrase, "resident of the named insureds' household" means one who dwells or has an abode under the same roof as the named insureds for a duration of sufficient length so that the occupiers can be said to compose a family. The factors to be considered in determining whether that test has been met include, but are not limited to, the intent of the parties, the formality of the relationship between the person in question and the members of the named insureds' household, the permanence or transient nature of that person's residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person.

Prudential argues that this definitional test should not be applied with respect to its policy because to do so would render other provisions of its policy meaningless. Specifically, Prudential contends that because its policy defines "household resident" as "someone who lives in your household," including a "resident relative," the phrase "household resident" necessarily extends beyond family members. Prudential contends that under the language of its policy, the "determining factor . . . of whether a person is a household resident is simply whether the person 'lives in . . . (the insured's) household.'" Brief for appellee Prudential at 14. We are not persuaded by this circular argument for two reasons. First, as noted above, Prudential's policy does not define "household." Second, even if we were to accept the premise that unmarried adults living under the same roof could constitute a household under some circumstances, it does not necessarily follow that all such arrangements compose a "household" for purposes of a coverage exclusion in an automobile liability insurance policy.

In *Quinlan v. Coombs*, 105 Wis. 2d 330, 314 N.W.2d 125 (Wis. App. 1981), the court addressed the question whether an unmarried and unrelated couple who lived together were residents of the same household for purposes of an exclusion similar in nature to those considered here. The court noted that under Wisconsin law, the "plain and common meaning of the expression 'residents of the household'" is:

> "a common type of close relationship, varying greatly in detail, where people live together as a family in a closely knit group, usually because of close relationship by blood, marriage, or adoption and deal with each other intimately, informally, and not at arm's length. The intention of the members as to the duration of the relationship would seem to be important in only two aspects. The intended duration should be sufficient so as not to be inconsistent with the intimacy of the relationship, and also long enough so that it is reasonable to expect the parties to take the relationship into consideration in contracting about such matters as insurance or in their conduct in reliance thereon. . . ."

(Emphasis omitted.) *Id.* at 333, 314 N.W.2d at 127, quoting *National Farmer's Union Property & Casualty Co. v. Maca*, 26

Wis. 2d 399, 132 N.W.2d 517 (1965). The court held that under this definition, it was not necessary for persons to be related by blood, marriage, or adoption in order to be residents of the same household, and that "public policy is enhanced by permitting insurance companies to exclude coverage in those close relationship situations where an insured is driving or has the opportunity to drive cars interchangeably rather than by merely casual use." *Id.* at 336, 314 N.W.2d at 129. The court concluded that a jury's determination that the two persons were residents of the same household was supported by evidence that they shared a bedroom, slept in the same bed, ate an average of two meals per day together, shopped for groceries together, and used each other's automobiles while residing together.

We note that the test which we articulated in *Amoco Ins. Co. v. Norton*, 243 Neb. 444, 500 N.W.2d 542 (1993), does not include a specific requirement that persons be related by blood or marriage in order to constitute a household. However, this case does not require us to decide whether unrelated persons living under the same roof could ever be considered members of the same household, because the undisputed facts are that Shivvers and Robertson lived together purely as a matter of economic expediency and not in any sense as a family. Their living arrangement had had a duration of only 10 days at the time of Robertson's injury and 11 months in total. Shivvers' original goal was to live in Chadron for 1 year. Each owned, operated, and insured her own vehicle, and they did not use their vehicles interchangeably. Each had her own bedroom, paid her own personal expenses, and lived independently of the other with the exception of their shared residence and religious activities. They were simply roommates. Courts in other jurisdictions have held that where persons reside together as roommates, or in a landlord-tenant relationship, they do not constitute a "household" as that term is used in insurance policy provisions such as those before us here. See, e.g., *Permanent General Assur. Corp. v. Woods*, 1993 WL 157665 (Tenn. App. May 14, 1993) (holding that term does not encompass landlord-tenant or simple roommate arrangements); *Universal Underwriters Ins. Co. v. Evans*, 565 So. 2d 741, 743 (Fla. App. 1990) (stating that "[w]hatever else the word 'household' may suggest, we have no difficulty

holding that it does not encompass landlord-tenant or simple roommate arrangements"); *Bartholet v. Berkness*, 291 Minn. 123, 189 N.W.2d 410 (1971) (holding two bachelors sharing same living quarters are not residents of same household). It has also been held that even when individuals are members of the same family, they are not residents of the same household when they reside together in roommate or landlord-tenant arrangements. *Donegal Mut. Ins. Co. v. State Farm*, 377 Pa. Super. 171, 546 A.2d 1212 (1988).

We conclude that the ordinary meaning of the language of the household exclusions contained in both the Prudential and American Family policies should be ascertained in accordance with the definitional test articulated in *Norton, supra*, and that under that test, it must be said as a matter of law that Shivvers and Robertson were not residents of the same "household" at the time of Shivvers' injury. For this reason, the district court erred in sustaining the motions for summary judgment of Prudential and American Family and in denying the motions of Shivvers and Robertson. Because we hold that coverage was not excluded by the language of either policy, we need not reach the issues raised by Robertson's cross-appeal. Likewise, we do not address any issue with respect to American Family's uninsured and underinsured motorist coverage other than the inapplicability of the household exclusion contained therein. We therefore reverse the judgment of the district court and remand the cause with directions to enter summary judgment for Shivvers and partial summary judgment for Robertson and for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.