# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

JEFFREY LOCKHART,          )
                                     )

     Plaintiff,           )
                                     )

     v.                  )      C.A. No. CPU4-17-001788
                                     )

PROGRESSIVE NORTHERN     )
INSURANCE COMPANY,        )
                                     )

     Defendant.          )

Joseph J. Longobardi, III, Esq.               Donald M. Ransom, Esq.
Longobardi & Boyle, LLC                      Casarino Christman Shalk
1700 Augustine Cut-Off                      Ransom & Doss, P.A.
Wilmington, DE 19803                      1007 N. Orange St., Ste. 1100
*Attorney for Plaintiff*                        Wilmington, DE 19899
                                         *Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

**RENNIE, J.**

The issue before this Court concerns whether an injured passenger has a right to be reimbursed for payment of medical bills under a non-relative's automobile insurance policy. On January 19, 2018, the Court heard *Defendant's Motion for Summary Judgment* and *Plaintiff's Counter-Motion for Summary Judgment*. This is the Court's decision on the cross-motions after consideration of the pleadings, oral argument, and the applicable case law.

## FACTUAL & PROCEDURAL HISTORY

At this phase of the proceedings, the Court will briefly summarize the procedure and facts relevant to the determination of this motion.

On February 28, 2017, Anita M. Byrd ("Ms. Byrd") and Jeffrey Lockhart ("Plaintiff") were traveling on 11th Street, crossing King Street in Wilmington, Delaware, when Ms. Byrd's vehicle was side-swiped by a second vehicle which protruded into her lane. At the time of this accident, Ms. Byrd was not driving her personal vehicle, which is insured by Progressive Northern Insurance Company ("Defendant"), but a rental vehicle registered in Pennsylvania.[1] Plaintiff, as a passenger, avers that he suffered "serious and permanent injuries" as a result of the accident.[2] Believing himself to be a member of Ms. Byrd's household, Plaintiff submitted medical bills to Defendant for payment, pursuant to Ms. Byrd's insurance policy which granted Personal Injury Protection (PIP) benefits.[3] Defendant denied Plaintiff's claim for PIP benefits.[4]

On April 26, 2017, Plaintiff filed a complaint against Defendant for breach of contract and bad faith stemming from its failure to pay his medical bills.[5] Plaintiff requests the Court enter a

---

[1] Progressive Northern Insurance Company ("Defendant") authorized the use of a rental vehicle because Ms. Byrd's personal vehicle was undergoing repairs.
[2] Plaintiff's Complaint ¶5.
[3] *Id.* ¶10.
[4] *Id.* ¶12.
[5] *Id.* ¶¶8-15.

money judgment against Defendant for payment of Plaintiff's PIP benefits, pre- and post-judgment interest, attorney's fees, statutory interest, punitive damages, and costs.[6]

On July 5, 2017, Defendant filed an answer claiming insufficient knowledge or information to form a belief as to the truth of most of the allegations. Notwithstanding, Defendant admitted that, at the time of the accident, Ms. Byrd was insured by Defendant, but denies that Plaintiff was covered as a member of her household pursuant to the PIP policy. On January 5, 2018, Defendant filed the instant *Motion for Summary Judgment* pursuant to *Delaware Court of Common Pleas Rule* 56(c), asserting that Plaintiff possesses no contractual right under Ms. Byrd's PIP policy and, accordingly, a bad faith denial did not occur.[7] On January 16, 2018, Plaintiff filed his *Response to Defendant's Motion for Summary Judgment and Plaintiff's Counter-Motion for Summary Judgment*.[8] And, on January 18, 2018, Defendant filed its *Response to Plaintiff's Cross-Motion for Summary Judgment*.[9]

## STANDARD OF REVIEW

"When opposing parties make Cross Motions for Summary Judgment, neither party will be granted summary judgment unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law."[10] *Court of Common Pleas Civil Rule* 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[6] Plaintiff's Complaint.

[7] Defendant Progressive Northern Insurance Company's Motion for Summary Judgment (hereinafter "Defendant's Motion").

[8] Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Counter-Motion for Summary Judgment (hereinafter "Plaintiff's Response").

[9] Defendant Progressive Northern Insurance Company's Response to Plaintiff's Cross-Motion for Summary Judgment (hereinafter "Defendant's Response").

[10] *Gallaher v. USAA Cas. Ins. Co.*, 2005 WL 3062014, at *1 (Del. Super. Nov. 14, 2005).

of law."[11] Diverging from the Superior Court's Civil Rule 56(h), Court of Common Pleas' Civil Rule 56 adheres to the original approach of addressing cross-motions for summary judgment.[12] The original approach to cross-motions for summary judgment, as previously articulated by the Superior Court and currently followed by the Court of Common Pleas is as follows:

> [T]he Court notes that where the parties have filed cross-motions for summary judgment, as here, "the standard for summary judgment 'is not altered.' " "Moreover, the existence of cross motions for summary judgment does not act *per se* as a concession that there is an absence of factual issues." "Rather, a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for the purposes of its own motion, and does not waive its right to assert that there are disputed facts that preclude summary judgment in favor of the other party." "Thus, the mere filing of a cross motion for summary judgment does not serve as a waiver of the movant's right to assert the existence of a factual dispute as to the other party's motion."[13]

## DISCUSSION

For the reasons discussed below, the Court finds for Defendant. Title 21 *Del. C.* § 2118(a) provides:

> No owner of a motor vehicle required to be registered in this State, other than a self-insurer pursuant to § 2904 of this title, shall operate or authorize any other person to operate such vehicle unless the owner has insurance on such motor vehicle providing the following minimum insurance coverage. . . .[14]

Regarding the inclusiveness of insurance coverage, § 2118(a)(2)d states:

> *The coverage required by this paragraph shall also be applicable to the named insureds and members of their households* for accidents which occur through being injured by an accident with any motor vehicle other than a Delaware insured motor vehicle while a pedestrian or while occupying any registered motor vehicle other than a Delaware registered insured motor vehicle, in any state of the United States, its territories or possessions or Canada.[15]

---

[11] Ct. Com. Pl. Civ. R. 56(c).

[12] *Compare* Ct. Com. Pl. Civ. R. 56 *with* Super. Ct. Civ. R. 56(h); *see also Reybold Venture Grp. XVI LLC v. Cresswell*, 2014 WL 7010757, at *4 (Del. Super. Nov. 26, 2014) (" 'where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.' ") (quoting Super. Ct. Civ. R. 56(h)).

[13] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. May 31, 2013) (footnotes omitted).

[14] 21 *Del. C.* § 2118.

[15] *Id.* (emphasis added).

Section 2118 does not define "members of their households." However, the Delaware Administrative Code has defined the phrase: "[f]or the purpose of this coverage members of the owner's household shall be members of the named insured's immediate family not having a separate household, and *persons actually residing with and economically dependent upon him/her.*"[16] The Insurance Commissioner has adopted and promulgated this regulation pursuant to Titles 18, 21, and 29.[17] Thus, as the regulation does not conflict with a relevant statute, the regulation is legally binding.[18]

Turning to the contract at issue, Part II of Ms. Byrd's "Delaware Auto Policy"—i.e. Ms. Byrd's PIP policy—states:

> If you pay the premium for this coverage, we will pay reasonable and necessary covered expenses:
> 1. incurred as a result of bodily injury sustained by an insured person in a motor vehicle accident; and
> 2. incurred within two years of the date of such motor vehicle accident.
> [. . .]
> ADDITIONAL DEFINITIONS
> When used in this Part II:
> [. . .]
> 2. "Insured person" or "insured persons" means:
>     a. *you, a relative, or any other household resident who is economically dependent on the named insured,* when injured:
>         (i) as a pedestrian in an accident involving any land motor vehicle;
> or
>         (ii) while occupying any registered motor vehicle other than a Delaware registered insured motor vehicle. . . .[19]

Listed under the "GENERAL DEFINITIONS" section of the Delaware Auto Policy:

> 10. "Relative" means a person residing in the same household as you, and related to you by blood, marriage or adoption, and includes a ward, stepchild, or foster

---

[16] 18 Del. Admin. C. 603-6.0(6.3) (emphasis added).
[17] *See* 18 Del. Admin. C. 603-1.0(1.1).
[18] *See Carroll v. Tarburton*, 209 A.2d 86, 88 (Del. 1965) ("It is well-settled that the General Assembly may grant an administrative agency the power to promulgate rules and regulations which have the effect of law in its area of operation.").
[19] Defendant's Motion, Exhibit C, at 7 (emphasis added).

child. Your unmarried dependent children temporarily away from home will qualify as a relative if they intend to continue to reside in your household.

[. . .]

16. "You" and "your" mean:

      a. a person shown as a named insured on the declarations page; and

      b. the spouse of a named insured if residing in the same household at the time of the loss.[20]

In Defendant's Motion for Summary Judgment, it asserts that Plaintiff does not meet the definition of an "insured person" for PIP coverage under the PIP Policy and, therefore, he is not entitled to reimbursement for medical expenses related to the accident.[21] Defendant notes that Plaintiff does not meet the definition of "you" or "relative" under the PIP Policy's definition of "insured person" because he is not named on the declarations page of the Delaware Auto Policy; married to Ms. Byrd; related by blood or adoption; or her stepchild, foster child, or ward.[22] Defendant also argues that Plaintiff cannot claim to be a "household resident" under the "insured person" definition as he is not economically dependent on Ms. Byrd.[23] Correspondingly, Defendant asserts that the PIP Policy's definition of "insured" does not violate 21 *Del. C.* § 2118(a)(2)d's phrase "members of their household" because 18 Del. Admin. C. 603-6.0(6.3) interprets §2118 as requiring economic dependency.[24] Additionally, Defendant argues that it is not liable for punitive damages or attorney's fees since its denial of Plaintiff's rights under the PIP policy was not based in bad faith, but on a reasonable contractual reason.[25]

---

[20] *Id.*, Exhibit C, at 2.

[21] Defendant's Motion ¶1.

[22] Defendant's Motion ¶4. Defendant relies on Plaintiff's deposition testimony in which he avers that he is not included on the declarations page, married to Ms. Byrd, or so related to her. *Id.*, Exhibit B, at 12-13.

[23] Defendant's Motion ¶4.

[24] *Id.*

[25] *Id.* ¶¶6-8. Defendant has requested punitive damages and attorney's fees based on bad faith. *Id.* ¶¶13-15. However, during the motion hearing, Plaintiff "conceded" his bad faith claims. To the extent such a claim remains, the Court finds that Plaintiff has failed to establish that Defendant acted in bad faith when it denied Plaintiff PIP benefits. *See* 21 *Del C.* §2118B(d); *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 368-69 (Del. Super. 1982). There simply is no evidence that Defendant acted "vexatiously, wantonly, or for oppressive reasons." *Affordable Autos, Inc. v. Dietert*, 2016 WL 1169244, at *8 (Del. Super. Mar. 24, 2016) (internal quotation marks omitted). Therefore, the granting of summary judgment in Defendant's favor on this claim is appropriate.

Plaintiff disagrees, and argues that 21 *Del. C.* § 2118(a)(2)d does not require economic dependency when defining "members of their households."[26] In Plaintiff's view, his Counter-Motion for Summary Judgment should be granted because his living with Ms. Byrd for approximately seven-and-a-half months before the accident is sufficient to satisfy the common meaning of household member in the statute.[27] Accordingly, he argues that the policy is "void and unenforceable pursuant to judicial precedents and the statute [§ 2118]."[28] Plaintiff cites *State Farm Mutual Insurance Company v. Wagamon*, and argues that the public policy underlying § 2118—supporting the "class of victims which the statutes were designed to protect"—should be afforded more weight in the Court's final determination.[29]

Plaintiff also cites *Bass v. Horizon Assurance Company* and *State Farm Mutual Automobile Insurance Company v. Kelty* as instructive precedent.[30] Plaintiff asserts *Bass*' finding that a Driving Under the Influence ("DUI") exclusion violates public policy is analogous to this case's factual posture.[31] Plaintiff subsequently relies on *Kelty* to argue that when the language of the statute is unambiguous, the public policy behind the statute should provide further interpretive guidance.[32] In response to Plaintiff's Motion for Summary Judgment, Defendant argues that

---

[26] Plaintiff's Response ¶¶7-9.

[27] *Id.* ¶¶4-8. Based on the sections of Plaintiff's deposition provided, the length of time Plaintiff had lived with Ms. Byrd at the time of the accident is unclear. *Id.*, Exhibit A, at 20. For reasons discussed *infra*, the length of time is immaterial to the present adjudication.

[28] *Id.* ¶9.

[29] *Id.* ¶10 (quoting *State Farm Mutual Ins. Co. v. Wagamon*, 541 A.2d 557, 560 (Del. 1987)) (internal quotation marks omitted).

[30] *Id.* ¶¶13-18 (citing *Bass v. Horizon Assurance Co.*, 562 A.2d 1194 (Del. 1988); *State Farm Mut. Auto. Ins. Co. v. Kelty*, 126 A.3d 631 (Del. 2015)).

[31] *Id.* ¶¶13-16.

[32] *Id.* ¶¶17-18. For reasons that will be discussed below, Plaintiff is incorrect. *State Farm Mut. Auto. Ins. Co. v. Kelty* stands for the opposite premise. *See* 126 A.3d 631, 639 (Del. 2015) ("As the Superior Court discussed, this Court has struck down insurance coverage exclusions that were against public policy on multiple occasions, including in *State Farm v. Wagamon* and *Nationwide General Insurance Company v. Seeman*. But those cases are distinguishable from this one in that they involved exclusions that were contrary to the language of § 2118 or, where the statute was ambiguous, did not accord with public policy as the Court could discern it from the insurance regime established by the General Assembly." (internal footnotes omitted)).

7

Plaintiff relies on case law that addresses exclusions which are not at issue in the present case.[33] Defendant reasserts that the statute and administrative regulation support the PIP policy's language here.[34]

The Court agrees with Defendant's position. The PIP policy accords with § 2118's language and the supporting administrative regulation's definition of "members of their households." The Court takes a moment to note that the statutory and contractual interplay in the case *sub judice* is unique. This is mainly because the insurance policy often specifically defines a variant of "household members" according to the Insurance Commissioner's regulation.[35] However, "members of their households" was not defined within the PIP policy at issue here. Instead, the PIP policy directly lifted the language of the regulation—i.e. "household resident who is economically dependent on the named insured." Perhaps because of this oddity, Plaintiff has not expressly argued that the PIP policy's language is ambiguous, instead arguing that the PIP policy's definition of "insured" creates a quasi-exclusion that violates Delaware law.[36] Thus, based on the issue as presented, the Court's analysis will address whether § 2118's language is ambiguous and then consider whether the contractual language is ambiguous. Secondarily, the Court will then determine if the policy's language violates Delaware law.

Regarding statutory interpretation, The Delaware Supreme Court has stated:

> It is well-settled that unambiguous statutes are not subject to judicial interpretation. "If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words." Accordingly, the first step in any statutory construction requires us to examine the text of the statute to determine if it is ambiguous. Under

---

[33] Defendant's Response ¶1.

[34] *Id.* ¶¶1-5.

[35] *See Ellis v. Travelers Ins. Co.*, 1994 WL 16398663, at *2 (Del. Super. Aug. 24, 1994); *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4247767, at *1-2 (Del. Super. Aug. 29, 2014).

[36] As it is not germane to the present issue, this Court will not address Plaintiff's assertion at the motion hearing that an insurance policy's definition is regarded as an exclusion. Although, Plaintiff's argument appears dubious. *See Kelty*, 126 A.3d at 637 n.22 (defining exclusion).

8

Delaware law, a statute is ambiguous if: first, it is reasonably susceptible to different conclusions or interpretations; or second, a literal interpretation of the words of the statute would lead to an absurd or unreasonable result that could not have been intended by the legislature.[37]

Section 2118 is not ambiguous. The phrase "members of their households" is neither susceptible to different interpretations, as it is defined by regulation, nor does a literal interpretation of the phrase lead to an absurd result.[38] Therefore, similar to a Court finding a statute unambiguous based on a common dictionary definition, 18 Del. Admin. C. 603-6.0(6.3) provides the necessary support for the phrase's commonality under the law.[39]

Turning to the PIP policy, the Court's analysis of an insurance policy is governed by contractual interpretation principles.[40] Hence, the primary question is whether the language is ambiguous.[41] The Delaware Superior Court has opined,

> In interpreting an insurance policy, this Court must respect clear and unambiguous language. If parties dispute the terms of an insurance policy, the Court must treat such dispute as a matter of law and interpret the policy in a common sense manner, allowing each term its plain meaning within the contract. Ambiguity in a contract exists only when the language allows more than one interpretation. The Court will not create an ambiguity to allow further interpretation since doing so potentially creates a new contract not agreed to by the parties.[42]

First, the Court finds that the phrase "household resident who is economically dependent" is not ambiguous. The terms which make up the phrase do not strike the Court as susceptible to

---

[37] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1288 (Del. 2007) (footnotes omitted) (quoting *In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del. 1993); *Newtowne Village Serv. Corp. v. Newtowne Road Dev. Co.*, 772 A.2d 172, 175 (Del. 2001); *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del. 1993)).

[38] *See* 18 Del. Admin. C. 603-6.0(6.3) ("For the purpose of this coverage members of the owner's household shall be members of the named insured's immediate family not having a separate household, and persons actually residing with and economically dependent upon him/her.").

[39] *See Leatherbury*, 939 A.2d at 1288–89. To the extent an argument exists that a regulation is insufficient to provide a common statutory definition, the Court's analysis of the PIP policy's terms *infra* apply with equal force to § 2118.

[40] *Nationwide Mut. Ins. Co. v. Starr*, 575 A.2d 1083, 1086 (Del. 1990).

[41] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 747 (Del. 1997) ("An insurance policy 'must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage.' "); *accord Nationwide Mut. Ins. Co. v. Hockessin Constr., Inc.*, 1996 WL 453325, at *2 (Del. Super. May 15, 1996).

[42] *Adams-Baez v. Gen. Accident Co.*, 2005 WL 2436220, at *1 (Del. Super. Sept. 30, 2005) (footnotes omitted).

competing "reasonable interpretations."[43] Delaware courts have held that "resident of the household" is unambiguous—"one who dwells or has an abode under the same roof as the named insured for a duration of sufficient length so that the occupiers can be said to compose a family."[44] The Court sees no reason why repositioning "resident" and "household," as in the present case, would obfuscate the phrase's meaning. Delaware case law has similarly regarded "economically dependent" as clear on its face.[45] For the remaining skeptic, BLACK'S LAW DICTIONARY defines "economics" as the "social science dealing with the production, distribution, and consumption of goods and services," and "dependent" as "[o]ne who relies on another for support; one not able to exist or sustain oneself without the power or aid of someone else."[46] The Court is not certain, and Plaintiff has failed to explain, how the PIP policy's language could have been plainer. Therefore, the Court will not reinterpret the contract to fit Plaintiff's agenda, "destroy[ing] or twist[ing] the words under the guise of construing them."[47]

Second, the PIP policy's language does not violate Delaware law. Section 2118(a)(2)d's broad statutory phrase, "members of their households," as defined by regulation, rests in harmony with the PIP policy. Indeed, the language found in 18 Del. Admin. C. 603-6.0(6.3) and the PIP policy's language are near mirror images of one another. Thus, this Court declines to "distort" the policy's plain language to "reach [Plaintiff's] desired result."[48]

---

[43] *Allstate Ins. Co. v. Laurenzi*, 2003 WL 22853529, at *2 (Del. Super. Nov. 28, 2003) (quoting *Temple v. The Travelers Indemnity Co.*, 2000 WL 33113814, at *1 (Del. Super. Nov. 30, 2000)).

[44] *See, e.g., Engerbretsen v. Engerbretsen*, 675 A.2d 13, 19 (Del. Super. 1995), *aff'd*, 676 A.2d 902, 1996 WL 69827 (Del. Feb. 8, 1996) (TABLE) (adopting the definition of the Nebraska Supreme Court in *Amco Ins. Co. v. Norton*, 500 N.W. 2d 542, 546-47 (Neb. 1993)) (internal quotation marks omitted). While *Engerbretsen* concerned interpretation of a homeowner's policy, the court relied on automobile insurance policy cases. *Engerbretsen*, 675 A.2d at *19-20 (finding no reason to draw a distinction between the two policies).

[45] *See generally Lukk*, 2014 WL 4247767 (Del. Super. Aug. 29, 2014); *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7715586 (Del. Super. Dec. 22, 2014).

[46] BLACK'S LAW DICTIONARY at 470, 552 (8th ed. 2004).

[47] *Lank v. Moyed*, 909 A.2d 106, 110 (Del. 2006) (internal quotation marks omitted).

[48] *Id.* (internal quotation marks omitted).

10

Because the Court finds that the PIP policy is harmonious with Delaware law, Plaintiff's public policy arguments are without merit.[49] If the PIP policy and § 2118 conflicted, or ambiguity existed, then turning to the public policy underlying the statute for guidance would be appropriate.[50] In fact, the case law which Plaintiff relies on for his public policy rationale support this position. In *Wagamon* and *Bass*, the Delaware Supreme Court contemplated public policy only after deeming the insurance policy provisions at issue to conflict with Delaware law.[51] Likewise, in *Kelty*, the Supreme Court reversed the Delaware Superior Court for the latter's contemplation of public policy when a conflict did not exist.[52] This analytic process is intuitive; if no conflict exists—as in the present case—then the Court has no reason to question the plain language of the contract.

Based on the unambiguous language of the PIP policy, Defendant has satisfied its burden under the summary judgment standard. In preparation for trial, Plaintiff was deposed in this case at Defense counsel's law office on September 26, 2017.[53] Mr. Longobardi, Esq. and Mr. Ransom, Esq. were present, as well as a registered professional reporter and notary public.[54] During his

---

[49] *See Barone v. Progressive Northern Ins. Co.*, 2014 WL 686953, at *4 (Del. Super. Jan. 29, 2014) ("Plaintiffs make a number of public policy arguments in support of their contention . . . . The Court previously concluded, and now reiterates, that the statutory and policy language at issue clearly and unambiguously preclude Plaintiff from recovering . . . . As a consequence, the Court shall not consider Plaintiffs' public policy arguments." (footnotes omitted)).

[50] *See State Farm Mut. Auto. Ins. Co. v. Kelty*, 126 A.3d 631, 641 (Del. 2015) ("Rather, the appropriate analysis to determine if coverage limitations or exclusions are valid is to start with the language of the statute, and only if it is ambiguous, to consider relevant public policy."); *Progressive Northern Ins. Co. v. Mohr*, 47 A.3d 492, 500 (Del. 2012) (delving into legislative intent and public policy concerns of 21 *Del. C.* § 2118(a)(2)(e) because the Court deemed the statute ambiguous).

[51] *See State Farm Mutual Ins. Co. v. Wagamon*, 541 A.2d 557, 560-62 (Del. 1987); *Bass v. Horizon Assurance Co.*, 562 A.2d 1194, 1197 (Del. 1988). Although Plaintiff does not rely on *Wagamon* for its factual posture, the Court notes that the case is not analogous. 541 A.2d at 558 (finding that a household exclusion, which prevented the mother of the insured from asserting a bodily injury claim even though she resided with the insured, was invalid). Similarly, *Bass* is factually inapposite.

[52] *See Kelty*, 126 A.3d at 639-41 ("where the language of the statute itself is unambiguous in requiring only $15,000 in minimum coverage, it would be error to interject our own view of what Delaware policy should be when the General Assembly has made its intentions clear."). This Court also notes that *Kelty* is factually inapplicable.

[53] Defendant's Motion, Exhibit B, at 1. Both Plaintiff and Defendant rely on Plaintiff's deposition testimony in their pleadings. Defendant's Motion, Exhibit B; Plaintiff's Response, Exhibit A.

[54] Defendant's Motion, Exhibit B, at 1.

deposition, Plaintiff testified that he lived with Ms. Byrd at the time of the accident.[55] He unequivocally stated that he is neither related to Ms. Byrd nor economically dependent on her.[56] He further testified that he and Ms. Byrd are boyfriend and girlfriend, but he is "[i]n the process of proposing."[57] Plaintiff's arguments rely heavily on his relationship status with Ms. Byrd and their cohabitation. Yet, Plaintiff's future intentions are not pertinent to determining PIP benefits under the policy. And while Plaintiff's status as a resident is relevant to determining who receives PIP benefits, it is insufficient on its own to justify awarding PIP benefits.[58] Therefore, Plaintiff's testimony satisfies the standard of summary judgment as there remains no material issue of fact for the factfinder to resolve at trial. Plaintiff is not an "insured person" under Ms. Byrd's PIP policy.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED** this 19th day of March, 2018.

Sheldon K. Rennie, Judge

---

[55] Plaintiff's Response, Exhibit A, at 14-15,19-20.

[56] Defendant's Motion, Exhibit B, at 12-13, 17.

[57] *Id.* at 11-12. Plaintiff indicated that he is " 'in the process' " of purchasing the engagement ring and is waiting for the perfect time to propose to her—ideally before his birthday. *Id.*

[58] For example, in *Ellis v. Travelers Ins. Co.* the court was mainly focused on the definition of a "resident" because Defendant challenged the awarding of No Fault and Underinsured Motorist coverage to Plaintiff based on his residency. 1994 WL 16398663, at *1-2.

12